2010 UT 12

David C. HARVEY and Dixie Harvey, Petitioners and Appellants,

v.

CEDAR HILLS CITY, Respondent and Appellee.

No. 20080586.

Supreme Court of Utah.

Feb. 26, 2010.

Gordon W. Duval, American Fork, for petitioners.

Eric Todd Johnson, R. Christopher Preston, Kyle C. Fielding, Salt Lake City, for respondent.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 This case arises from a petition filed by appellants, David C. and Dixie Harvey (the "Harveys"), seeking disconnection of their land from Cedar Hills City. After this petition was filed in August 2001, but before the district court granted summary judgment in favor of Cedar Hills in June 2008, the legislature amended certain sections of the Utah Code that relate to the standards for granting disconnection (the "2003 amendments").[1] The district court determined that disconnection was prohibited under both versions of the disconnection statute because it found the two versions identical with regard to what it believed to be the single dispositive issue: that disconnection would form an unincorporated island. In this appeal, we must determine whether the district court erred in this determination. To resolve that issue, we must decide (1) which version of the disconnection statute applies to the Harveys' petition; and (2) whether, under the correct version of the law, the district court erred in dismissing the petition based solely on the fact that disconnection would result in an island of unincorporated land.

¶ 2 We hold that because the 2003 amendments substantively modified the criteria for disconnection the 2001 version of the disconnection statute ("2001 statute") applies in this case. We further hold that disconnection under the 2001 statute is permissible, even if it results in an island of unincorporated land, if the district court determines that disconnection will not materially increase the burdens borne by the municipality. Because the district court failed to consider whether disconnection of the Harveys' land would materially increase the burdens on Cedar Hills, it erred in granting summary judgment. We therefore reverse the judgment of the district court and remand so that the court may determine the overall impact of disconnection.

## BACKGROUND

¶ 3 The parcel of land at issue in this case lies at the border between the cities of Cedar Hills and Pleasant Grove. Indeed, the Harveys own two contiguous parcels of land. The southern halves of each parcel are incorporated into Pleasant Grove, while the northern halves of each parcel—the land at issue in this case—are incorporated into Cedar Hills.

¶ 4 The border between the two cities is irregularly drawn. In general, Cedar Hills is north of Pleasant Grove. But on Pleasant Grove's eastern border, Cedar Hills extends southward, forming a peninsula that separates Pleasant Grove from unincorporated land further east. Along this same border, Pleasant Grove extends northward, forming a smaller peninsula that extends into Cedar Hills. The Harvey property lies in the midst

1. *See* Municipal Disconnection Amendments, ch.     279, §§ 1–6, 2003 Utah Laws 1283.

of this area of mutual encroachment, in a corner of the boundary between the two cities. Cedar Hills is situated to the west and north of the Harvey property. Pleasant Grove lies to the south and east.

¶ 5 In June of 2001, the Harveys presented Cedar Hills with a Request for Disconnection. This request cited, as the justification for disconnection, city zoning decisions that the Harveys found to be objectionable, including the decision by Cedar Hills to annex a portion of the Harvey property for use as a city park and the apparent failure of the Harveys and Cedar Hills to negotiate a mutually satisfactory plan for the future use of the land. The Harveys also cited their desire to have their parcels of land united under a single city's government, indicating their intention to seek incorporation into Pleasant Grove if the disconnection were granted.

¶ 6 When Cedar Hills did not grant this request for disconnection within the statutory time frame, the Harveys filed their petition with the district court. At about this same time, Cedar Hills' proposed use of the Harveys' land led to the commencement of two other cases. In one case, the Harveys alleged that Cedar Hills' actions amounted to an unconstitutional taking. In the second case, Cedar Hills sought condemnation of the territory proposed for disconnection. The condemnation action and the takings claim were ultimately consolidated with this case and stayed pending the district court's resolution of the disconnection issue. These actions delayed until 2008 the district court's consideration of the issues regarding retroactive application of the amended standard.

¶ 7 This delay bears on the central issue in this case. Had the dispute between Cedar Hills and the Harveys been resolved prior to 2003, only one version of the relevant portions of the Utah Code would have been at issue. But because the legislature amended portions of the disconnection statutes in 2003, the court was faced with two potentially applicable versions of the disconnection statute and was therefore required to determine whether the 2003 amendments should be given retroactive effect.

¶ 8 The Harveys moved for summary judgment on the issue of which version of the disconnection statute should be applied in this case. After oral argument on the issue, the district court determined that no substantive difference exists between the 2001 statute and the 2003 amendments. Instead, the court found that unincorporated islands of land are prohibited under either version. Finding also that the Harveys' property would form such an island, the court granted summary judgment in favor of Cedar Hills and denied the Harveys' petition.

¶ 9 We hold that the district court erred in granting summary judgment in favor of Cedar Hills. The court's conclusion that the statutes are identical was incorrect because the 2003 amendments substantively modified the criteria for disconnection. Unlike the 2003 amendments, the 2001 statute does not absolutely prohibit islands of unincorporated territory. Instead, the creation of such an island is one of several factors that the court must consider in determining whether to permit disconnection. Because the district court concluded that unincorporated islands are prohibited under either version of the disconnection statute, it did not consider the impact of the island as required by the 2001 statute. Without resolution of this factual question, summary judgment was inappropriate. Therefore, we reverse the judgment of the district court and remand for application of the correct standard. We have jurisdiction pursuant to section 78A–3–102(3) of the Utah Code.

## STANDARD OF REVIEW

¶ 10 We review a district court's grant of summary judgment for correctness.[2] We affirm a grant of summary judgment when the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] A district court's interpre-

---

2. *MacFarlane v. Utah State Tax Comm'n*, 2006 UT 25, ¶ 9, 134 P.3d 1116.

3. Utah R. Civ. P. 56(c).

tation of a statute is a question of law, which we also review for correctness.[4]

## ANALYSIS

¶ 11 Our task is not to determine the propriety of disconnection in this case. Instead, we must determine whether the district court erred in granting summary judgment in favor of Cedar Hills. In resolving this question we have come to two conclusions. First, the Harveys' petition should be analyzed under the 2001 statute. Second, summary judgment was inappropriate because the district court did not examine the overall impact of disconnection relative to the burdens borne by the municipality in providing services to the surrounding area. Because the court did not determine whether disconnection of the Harveys' land would materially increase the burdens on Cedar Hills, we reverse its grant of summary judgment and remand for further proceedings.

## I. THE HARVEYS' PETITION SHOULD BE ANALYZED UNDER THE LAW IN EFFECT IN 2001 BECAUSE THE 2003 AMENDMENTS SUBSTANTIVELY CHANGED THE DISCONNECTION STATUTES

¶ 12 The Harveys filed their disconnection petition in August 2001. As a general rule, when adjudicating a dispute we apply the version of the statute that was in effect "at the time of the events giving rise to [the] suit."[5] Thus, the statute in effect in 2001

will control the resolution of this dispute unless an exception to the general rule applies in this case.

¶ 13 We have previously observed that exceptions to this general rule are rare.[6] In large part, this is because the Utah Code expressly restricts the retroactive application of legislative changes by declaring that "[n]o part of these revised statutes is retroactive, unless expressly so declared."[7] In conjunction with this restriction, we "presume that when the legislature amends a statute, it intended the amendment 'to change existing legal rights.'"[8] When a statute is amended without expressly providing for retroactive application—as is the case here—the circumstances that justify retroactive application of the amendment are limited.[9]

¶ 14 Within these limits, we have recognized two exceptions that Cedar Hills argues should apply in this case. First, we will give retroactive effect to statutory amendments that merely "clarify the meaning of an earlier enactment."[10] Second, a statute may be given retroactive effect if it changed prior law in ways that are merely procedural.[11] A change will be considered procedural if it "merely 'pertains to ... the practice and procedure or the legal machinery by which the substantive law is determined or made effective.'"[12] We have often stated that retroactive application is permissible if the amended version of the statute "[does] not enlarge, eliminate, or destroy vested or contractual rights."[13] In contrast, we have

4. *MacFarlane,* 2006 UT 25, ¶ 9, 134 P.3d 1116.

5. *Taghipour v. Jerez,* 2002 UT 74, ¶ 5 n. 1, 52 P.3d 1252.

6. *See Olsen v. Samuel McIntyre Inv. Co.,* 956 P.2d 257, 261 (Utah 1998) ("This court ... 'narrowly draws the boundaries of what constitutes a procedural statute.'" (quoting *Salt Lake Child & Family Therapy Clinic, Inc. v. Frederick,* 890 P.2d 1017, 1020 n. 3 (Utah 1995))).

7. Utah Code Ann. § 68-3-3 (2008).

8. *Olsen,* 956 P.2d at 261 (quoting *Visitor Info. Ctr. Auth. v. Customer Serv. Div.,* 930 P.2d 1196, 1198 (Utah 1997)).

9. *Id.*

10. *Dep't of Soc. Servs. v. Higgs,* 656 P.2d 998, 1001 (Utah 1982).

11. *Roark v. Crabtree,* 893 P.2d 1058, 1062 (Utah 1995).

12. *Brown & Root Indus. Serv. v. Indus. Comm'n,* 947 P.2d 671, 675 (Utah 1997) (quoting *Wash. Nat'l Ins. Co. v. Sherwood Assocs.,* 795 P.2d 665, 669 (Utah Ct.App.1990)).

13. *Higgs,* 656 P.2d at 1000. *See also Due South, Inc. v. Dep't of Alcoholic Beverage Control,* 2008 UT 71, ¶ 14, 197 P.3d 82; *Powell v. Cannon,* 2008 UT 19, ¶ 3 n. 1, 179 P.3d 799; *Kilpatrick v. Wiley,* 2001 UT 107, ¶ 59, 37 P.3d 1130; *Brown & Root,* 947 P.2d at 675; *Moore v. Am. Coal Co.,* 737 P.2d 989, 990 (Utah 1987).

characterized the substantive law as "the positive law which creates, defines and regulates the rights and duties of the parties." [14] Thus, if the 2003 amendments modified the Harveys' rights with regard to disconnection, retroactive application of the amendments is inappropriate.

■ ¶15 The starting point for this inquiry, as with all questions of statutory interpretation, is an examination of the plain language of the relevant statutes. [15] If the language is unambiguous, we confine our interpretation to the words of the two statutes. [16] We "seek guidance from the legislative history and relevant policy considerations" only if the statutory language is ambiguous or unclear. [17]

¶16 If our comparison of the two versions of the disconnection statutes reveals differences in statutory language, we will then examine whether these differences are procedural or were adopted for purposes of clarifying the earlier version of the statute. If so, we will give retroactive effect to the 2003 amendments. But if the 2003 amendments resulted in substantive changes to the law, we will apply the law in effect at the time the Harveys filed their petition.

*A. The Plain Language of the Disconnection Statutes Reveals Clear Differences in the Criteria for Disconnection*

¶17 A side-by-side comparison of the relevant provisions makes it clear that the statutes are different. After the 2003 amendments, the disconnection statute places the burden on petitioners to prove several things by a preponderance of the evidence. [18] They must show that disconnection is viable and required by justice and equity. [19] They must also show that the county where the disconnected land will be situated is "capable [of providing], in a cost-effective manner and without materially increasing the county's costs," the services previously provided by the municipality. [20] In addition, the petitioners must prove that disconnection will not "leave the municipality with an area within its boundaries for which ... burdens of providing municipal services would materially increase," or "make it ... unfeasible for the municipality to continue to function as a municipality." [21] Finally, and crucially, the 2003 amendments require the petitioner to prove "that the proposed disconnection *will not* ... leave or create one or more islands or peninsulas of unincorporated territory." [22]

¶18 We have previously noted that this last requirement operates as an absolute prohibition on disconnection when it would result in an island of unincorporated territory. In *Bluffdale Mountain Homes, LC v. Bluffdale City*, we stated, "[c]learly, if the disconnection creates an island of unincorporated territory, the disconnection is impermissible." [23] We went on to explain that islands are disfavored because they lead to irregular city boundaries and because they "inhibit the ability of the responsible county to provide services." [24] We drew on the clear prohibition of islands in the 2003 version of the statutes in order to determine whether, and when, peninsulas were similarly prohibited. [25]

14. *Brown & Root*, 947 P.2d at 675 (internal quotation marks omitted).

15. *Vigos v. Mountainland Builders, Inc.*, 2000 UT 2, ¶13, 993 P.2d 207 ("The plain language controls the interpretation of a statute, and only if there is ambiguity do we look beyond the plain language to legislative history or policy considerations.").

16. *Id.*

17. *World Peace Movement of Am. v. Newspaper Agency Corp., Inc.*, 879 P.2d 253, 259 (Utah 1994).

18. Utah Code Ann. § 10–2–502.7(3) (2007) ("The burden of proof is on petitioners who must prove [the necessary facts] by a preponderance of the evidence.").

19. *Id.* § 10–2–502.7(3)(a) to (3)(b).

20. *Id.* § 10–2–502.7(3)(d).

21. *Id.* § 10–2–502.7(3)(c)(i) to (3)(c)(ii).

22. *Id.* § 10–2–502.7(3)(c)(iii) (emphasis added).

23. 2007 UT 57, ¶63, 167 P.3d 1016.

24. *Id.* ¶64.

25. *Id.* ¶67 ("As with all unincorporated islands, some unincorporated peninsulas are prohibited because they impair or inhibit the provision of services. Peninsulas that jut into incorporated territory may leave only a narrow neck of land through which the county or city must provide services.").

We concluded, "some peninsulas are too much like an island and therefore are prohibited." [26]

¶ 19 Examining the statutory language again in the context of this case, it is clear that this provision is meant to prohibit islands of unincorporated territory. The statute plainly states that the petitioners bear the burden of proving that disconnection will not "leave or create one or more islands . . . of unincorporated territory." [27] As a result of the 2003 amendments, a petition for disconnection must be rejected if disconnection will result in an island. [28]

¶ 20 This conclusion is reinforced by examining the structure of this section of the statute. As mentioned, the petitioners are required to prove a number of things in order to obtain disconnection. When a petitioner seeks to persuade the court that the burdens on the municipality will not be increased, or that disconnection will not make it unfeasible for the municipality to continue operating, the court is compelled by statute to "consider all relevant factors." [29] The statute then sets forth an illustrative list of factors that the legislature considered relevant to this determination—such as the effect on the "community as a whole," "water services," "law enforcement," and "other municipal services." [30] There are no similar factors that the legislature considered relevant to determining whether an island is created. [31]

¶ 21 More importantly, the statute makes this disparate treatment quite conspicuous. These three criteria—that disconnection will not increase the burdens on the municipality, that disconnection will not make unfeasible

the municipality's continued existence, and that disconnection will not create an island—are grouped together and set forth at Utah Code sections 10–2–502.7(3)(c)(i), –502.7(3)(c)(ii), and –502.7(3)(c)(iii). Yet, the section where the statute instructs the court to consider all relevant factors explicitly refers to the petitioners' burden to prove the criteria set forth in "Subsections (3)(c)(i) and (ii)." [32] In other words, all three of these criteria must be proved to support a petition for disconnection. But only for two of them does the statute require the court to undertake a multi-faceted inquiry into all relevant factors. [33] The creation of an island of unincorporated territory is not subject to this intricate analysis regarding costs. The disparate nature of this inquiry reinforces what is made clear by the plain language of the 2003 amendments—if disconnection would lead to an island of unincorporated territory, the petition must be rejected.

¶ 22 This stands in stark contrast to the disconnection statute in effect in 2001. Where the 2003 version of the statute elevates the creation of an island to a dispositive element of a petitioner's claim, the version of the statute in effect in 2001 groups it together with all of the other factors the court must consider in assessing whether disconnection will increase the burdens borne by the municipality. [34] The 2001 statute required the court to determine "whether or not disconnection will leave the municipality with a residual area within its boundaries for which the cost, requirements, or other burdens of municipal services would materially increase over previous years or for which it would

26. *Id.*

27. Utah Code Ann. § 10–2–502.7(3)(c)(iii) (2007).

28. There is an open issue regarding whether a short-term period of disconnection from one municipality, followed by pre-ordained incorporation into another municipality, falls within the statutory prohibition on "leav[ing] or creat[ing] one or more islands . . . of unincorporated territory." *Id.* Because annexation is only permitted where a piece of land is, among other things, a "contiguous, *unincorporated* area," *Id.* § 10–2–402(1)(a) (emphasis added), these statutes could be interpreted to prevent disconnection and subsequent annexation of parcels of land wholly situated between two municipalities. Because

our disposition of this case relies on the 2001 version of the statute, we need not address this issue here.

29. *Id.* § 10–2–502.7(4).

30. *Id.* § 10–2–502.7(4)(a) to (4)(h).

31. *See id.* § 10–2–502.7(3)(c)(iii).

32. *Id.* § 10–2–502.7(4).

33. *Id.*

34. *Compare id.* § 10–2–502.7(3)(c)(iii) (2007) *with id.* § 10–2–503(2) (1999).

become economically or practically unreasonable to administer as a municipality." [35] As discussed above, these two criteria persist in almost identical form after the 2003 amendments. Like the 2003 version of the statute, the 2001 statute requires the court to "consider all relevant factors." [36] And the 2001 version contains an *almost* identical list of factors that the legislature considered relevant to this determination. In fact, the *only* difference in this list of illustrative factors is that, in assessing the burdens on the municipality, the 2001 statute requires the court to consider "whether or not islands or unreasonably large or varied-shaped peninsular land masses result within or project into the boundaries of the municipality from which the territory is to be disconnected." [37]

¶ 23 This difference is crucial: after the 2003 amendments, the statute instructs the court to reject a petition if granting disconnection will result in an island of unincorporated territory; in 2001, the statute instructed the court to "consider" whether the creation of an island, along with factors like the effects on the "city or community as a whole," materially burdened the municipality. [38] In other words, under the 2001 statute, the creation of an island was not an independently dispositive element of the petitioner's claim. As a legal matter, it was relevant only to the extent that it would add to a city's ongoing costs.

¶ 24 There is a clear difference between a statute that requires a court to consider this possibility, and a statute that simply prohibits disconnection where an island of unincor-

porated territory would be created. This difference lies at the crux of our determination in this case. When the Harveys petitioned for disconnection in 2001, the statute held open the possibility that an island might be created that would not materially increase the burdens of providing municipal services to the surrounding area. After the 2003 amendments, that possibility is completely foreclosed. Regardless of why the legislature chose to extinguish this possibility, it is clear that the 2003 amendments modified the criteria for disconnection.

## B. The Differences in the Criteria for Disconnection Modified the Substantive Rights of Landowners Seeking Disconnection

¶ 25 Having identified the crucial difference between the two versions of the statute, we must now determine whether those differences modified substantive rights. If the changes were procedural, or if the changes were meant to clarify preexisting law, then retroactive application of the 2003 amendments is appropriate. [39] But if the changes were substantive, the Harveys are entitled to have their petition resolved under the law in effect at the time it was filed. [40] We are persuaded that the 2003 amendments to these standards are not procedural. Nor do they represent a mere clarification of the law in effect prior to the amendments. Rather, we find that these changes alter the substantive law—the "positive law which creates, defines and regulates the rights and

---

35. *Id.* § 10–2–503(1) (1999). To be precise, the 2001 version of the code required that a board of disinterested commissioners, appointed by the court and working from their independent factual findings, make this determination. The commissioners would then report their findings to the district court. But the court was free to reject their findings, and section 10–2–505(4) required the court to "[c]onsider[ ] all the evidence and the commissioners' report" but then to make its own independent finding as to whether the disconnection satisfied the requirements of section 10–2–503. Because ultimate authority rested with the district court, the fact that a body of commissioners occupied an advisory role does not alter our analysis of the substantive criteria for disconnection.

36. *Id.* § 10–2–503(2) (1999).

37. *Compare id.* § 10–2–502.7(4)(a)–(h) (2007) *with id.* § 10–2–503(2)(a)–(i) (1999).

38. *Id.* § 10–2–503(2) (1999).

39. *Olsen v. Samuel McIntyre Inv. Co.,* 956 P.2d 257, 261 (Utah 1998) ("An exception to the general rule against retroactivity applies to changes which are procedural only, or amendments which clarify statutes." (citations omitted)).

40. *See id.* (holding that modified version of Workers' Compensation Act could not be applied retroactively where the rights and duties of the employer and the worker's dependents had been defined under the prior version of the law).

duties of the parties and which may give rise to a cause of action." [41]

¶ 26 Cedar Hills argues in favor of retroactive application based on both of these possible exceptions. It first asserts that islands have always been prohibited under Utah Law, and that the 2003 amendments to the disconnection statute were meant merely to clarify that rule in the face of potentially ambiguous statutory language.[42] This argument is necessarily foreclosed by our analysis of the plain statutory language. As we have explained, the statutory language reveals clear substantive differences in the treatment of petitions for disconnection when granting the petition would result in an island of unincorporated territory.

¶ 27 Cedar Hills suggests that we have previously interpreted the disconnection statute as prohibiting islands of unincorporated territory.[43] Thus, it asserts, the statutory language has always meant that islands are prohibited, and the purpose of the 2003 amendments was merely to make this prohibition clear. Cedar Hills also cites remarks by certain legislators suggesting that no substantive change was intended by the 2003 amendments.

¶ 28 If we had interpreted prior versions of the statute as prohibiting disconnection where it would result in an island of unincorporated territory, Cedar Hills' argument might have merit. But we have never been presented with this issue until now.[44] And because the statutory language is clear, we decline the invitation to weigh the relative weight of potentially conflicting comments made by individual legislators. The 2001 statute clearly leaves open the possibility that disconnection of some parcels of land will not burden the municipality, even if the disconnection results in an island of unincorporated territory. Because this possibility does not exist after the 2003 amendments, the statutory alteration did more than merely clarify the prior version of the law.

¶ 29 The changes introduced by the 2003 amendments also cannot be characterized as procedural. The 2003 amendments were qualitatively different from an alteration to the legal machinery employed for determining the propriety of disconnection. Instead of simply modifying how a disconnection peti-

41. *Brown & Root Indus. Serv. v. Indus. Comm'n,* 947 P.2d 671, 675 (Utah 1997) (quoting *Wash. Nat'l Ins. Co. v. Sherwood Assocs.,* 795 P.2d 665, 669 (Utah Ct.App.1990)).

42. To support this assertion, Cedar Hills cites nearly two dozen decisions spanning a century of disconnection cases, including *In re Barton,* 33 Utah 50, 92 P. 770 (1907); *In re Fullmer,* 33 Utah 43, 92 P. 768 (1907); and *Bluffdale Mountain Homes, LC v. Bluffdale City,* 2007 UT 57, 167 P.3d 1016. Only a small number of these cases are relevant, though, because prior to 1977, disconnection was permitted based on a court's finding that "justice and equity" would require it. Only after 1977 were courts required to evaluate the creation of islands, along with other factors, to determine the effect of disconnection. *See* Act of March 10, 1977, ch. 48, § 2, 1977 Utah Laws 220.

43. The small number of disconnection cases decided between 1977 and 2003 did not address whether the creation of an island was fatal to a petitioner's claim for disconnection. Rather, our cases have treated this consideration as relevant to the broader statutory inquiry into the burdens on the municipality and whether justice and equity would be served by granting disconnection. Thus, the petitions in those cases were granted, or rejected, based on the district court's findings regarding the overall burden on the municipality. *See In re Disconnection of Certain Territory from Highland City (In re Disconnection from Highland City),* 668 P.2d 544, 546 (Utah 1983); *In re Disconnection of Territory & Restriction of the Corporate Limits of Draper (In re Disconnection from Draper),* 646 P.2d 699, 702–03 (Utah 1982); *Cont'l Bank & Trust Co. v. Farmington City,* 599 P.2d 1242, 1247 (Utah 1979). Although our line of cases may indicate that disconnection has generally been denied in cases where an island has been created, they do not indicate that disconnection was denied *because* islands were created.

44. Specifically, Cedar Hills relies heavily on *In re Disconnection from Highland City* and *In re Disconnection from Draper.* In both of those cases, we noted that the lack of an island was relevant to the minimal impact on the costs borne by the city. *In re Disconnection from Highland City,* 668 P.2d at 546; *In re Disconnection from Draper,* 646 P.2d at 702–03. After all, if no island is created by disconnection, then any increase in costs cannot be attributed to the creation of an island. But it does not follow that the creation of an island would necessarily have increased these costs. Those cases simply did not hold that the presence of an island would have been fatal to disconnection.

tion is filed, for example, these amendments altered the criteria for determining whether disconnection is allowed. This change is not merely procedural.

¶ 30 To be clear, the 2003 amendments altered more than just the criteria at issue in this case. One such alteration arguably satisfies our standard for a procedural change: the 2003 amendments did away with the requirement that the district court appoint a board of commissioners.[45] These independent commissioners were previously appointed to evaluate the petition for disconnection and to report their findings to the court.[46] After the 2003 amendments, the statute contains no reference to these commissioners.[47] Instead, the 2003 version of the statute requires landowners, prior to presenting their petition to the district court, to present their request for disconnection at a public hearing before the municipality's legislative body.[48] Only if the municipality persists in denying the disconnection may a party file their petition in district court.[49] Though we need not decide the issue here, it appears that these changes merely alter the legal mechanisms that a landowner must employ before attempting to prove the viability of disconnection. Thus, some portions of the 2003 amendments might fairly be said to be procedural.[50] But the arguably procedural nature of these amendments does nothing to nullify the clearly substantive change in the law that was enacted at the same time.

¶ 31 The issue presented to us is whether the criteria for disconnection were substantively modified, and we conclude that they were. We find the two versions of the statute to be substantively different with regard to the relative standards for granting petitions for disconnection. After the 2003 amendments, such petitions must be denied if disconnection will result in an island of unincorporated territory. Under the statute in effect in 2001, such petitions could be granted, so long as the island would not materially increase the municipality's burdens of providing municipal services to the surrounding area. This change in the law affected substantive rights, and therefore, the 2003 version of the statute should not be given retroactive effect. We hold that the district court erred in its interpretation of the disconnection statutes and that the 2001 version, as interpreted herein, should have been applied.

## II. UNDER THE 2001 VERSION OF THE DISCONNECTION STATUTES, IT WAS ERROR FOR THE DISTRICT COURT TO DENY THE HARVEYS' PETITION WITHOUT CONSIDERING WHETHER DISCONNECTION WOULD INCREASE THE BURDENS BORNE BY CEDAR HILLS

¶ 32 Having determined that the district court applied the wrong statutory standard in resolving the Harveys' petition, we must next examine whether Cedar Hills was nevertheless entitled to judgment as a matter of law. We conclude that the district court's judgment must be reversed, and the case must be remanded for reconsideration of the Harveys' petition for disconnection. On remand, the district court must apply the disconnection statute that was in effect in 2001. As our discussion has made clear, those statutes do not prohibit disconnection merely

---

45. *See* Municipal Disconnection Amendments, ch. 279, §§ 2–3, 6, 2003 Utah Laws 1283.

46. *See* Utah Code Ann. §§ 10–2–502 to –504 (1999).

47. *See generally id.* §§ 10–2–501 to –510 (2007).

48. *See id.* § 10–2–501.

49. *Id.* § 10–2–502.5.

50. Cedar Hills argues that it is "important to note that the Harveys acquiesced in the procedural requirements of the 2003 Disconnection Statute." With this, Cedar Hills appears to argue that because the Harveys participated in a hearing with the Cedar Hills city council, similar to the hearing contemplated by the 2003 version of the statute, they have also chosen to be governed by the substantive standards set forth in the 2003 amendments. This notion—that acquiescence in the procedural requirements in a new version of a statute amounts to a waiver of substantive rights under the prior version of the statute—is untenable. Our precedent permitting procedural rights to be applied retroactively presupposes that the substantive rights at issue need not be bound up with the procedures used to vindicate them.

because it will result in the creation of an island of unincorporated territory.

■ ¶ 33 The 2001 statute requires the court to make two key determinations. First, under Utah Code section 10–2–505(3), the petitioners must "prove the viability of the disconnection and that justice and equity require that the territory be disconnected." [51] Second, under sections 10–2–505(4) and 10–2–503, the court must determine, as discussed at length throughout this opinion, that the proposed disconnection will not "leave the municipality with a residual area within its boundaries for which the cost, requirements, or other burdens of municipal services would materially increase over previous years or for which it would become economically or practically unreasonable to administer as a municipality." [52] In making this second determination, the statute instructs the court to "consider all relevant factors." [53]

¶ 34 This requires the court to examine the "effect of disconnection" on all of the factors listed in section 10–2–503(2). [54] These include the effect on the "community as a whole [and] adjoining property owners," as well as the effects on existing and proposed public streets, sewer and water services, "law enforcement," and "zoning." [55] In addition to these specific factors, the court must consider the impact of disconnection on any "other municipal services." [56] Finally, the statute requires the court to consider the effect on Cedar Hills of the creation of "islands or unreasonably large or varied-shaped peninsular land masses." [57]

¶ 35 All of these factors will inform the district court's determination regarding whether the municipality will incur a material increase in costs because of the disconnection. No single factor is necessarily dispositive. To be sure, if the city is required to rework its infrastructure for delivering water or sewer services, the cost may be so burdensome that disconnection should be denied.

And the creation of an island of unincorporated territory may contribute to these costs. The creation of an island is also likely to be relevant when examining the costs of building new roads or modifying law enforcement services.

¶ 36 But it is also entirely possible that a proposed disconnection will have a minimal impact on the provision of municipal services, even though an island will be created. Where a parcel of land touches the border of a municipality, roads, water lines, and sewer lines may not cross the parcel at all. The other links that generally connect a particular parcel of land and the municipality to which it belongs might also be similarly attenuated. Further, the creation of easements or licenses might be employed to mitigate changes that would otherwise be materially burdensome for the municipality. Because each parcel of land is unique, so too will be the relationship between any given parcel of land and the municipality to which it belongs. Thus, there is always the possibility that the presence or absence of one particular piece of land might be immaterial to the city's cost of providing municipal services.

¶ 37 Assessing the impact of disconnecting a particular piece of land is necessarily a fact-intensive process. In view of the complexity surrounding these determinations, the disconnection statute directs the court to "consider all relevant factors." [58] But because it believed that the creation of an island was prohibited, the district court never examined these factors. Rather, the impact of disconnection is a factual issue that remains disputed, and this issue is material under the 2001 statute. As such, summary judgment in favor of Cedar Hills was inappropriate. Because we are not in a position to undertake this inquiry or to make the necessary factual determinations, we must reverse the judgment of the district court

**51.** Utah Code Ann. § 10–2–505(3) (1999).

**52.** *Id.* § 10–2–503(1).

**53.** *Id.* § 10–2–503(2).

**54.** *Id.*

**55.** *Id.* § 10–2–503(2)(a) to (2)(g).

**56.** *Id.* § 10–2–503(2)(h).

**57.** *Id.* § 10–2–503(2)(i).

**58.** *Id.* § 10–2–503(2).

and remand this case for additional proceedings.

## CONCLUSION

¶ 38 If the Harveys' disconnection petition had been filed after the 2003 amendments to the disconnection statutes became effective, the district court's analysis would have been correct. Those amendments require the court to deny a disconnection petition if it will result in an island of unincorporated territory. Prior to the 2003 amendments, creation of such an island was simply one of many factors the court was required to consider in assessing the viability of disconnection from the point of view of the municipality. Because this difference substantively altered the criteria for disconnection, the district court was required to apply the disconnection criteria in effect at the time the Harveys filed their petition.

¶ 39 The disconnection statute in effect in 2001 required the court to determine whether disconnection would lead to a material increase in the burdens borne by Cedar Hills. The district court did not reach this question; as such, it did not undertake one of the key factual inquiries required by the 2001 statute. Because this unresolved issue made summary judgment inappropriate, we reverse the judgment of the district court and remand for further proceedings.

¶ 40 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT'S opinion.