**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 5, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DOUGLAS S., ANN C.S., and
LAURA S.,

      Plaintiffs-Appellants,

v.

ALTIUS HEALTH PLANS, INC.,

      Defendant-Appellee.

No. 09-4130
(D.C. No. 2:07-CV-00734-DAK)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **GORSUCH**, and **HOLMES**, Circuit Judges.

This appeal arises out of a dispute over whether Plaintiffs-Appellants'

health insurance policy includes coverage for residential treatment. Plaintiffs-

Appellants, Douglas S., Ann C.S., and Laura S. (collectively "Appellants"), filed

suit in federal district court seeking reimbursement and declaratory relief after

their insurance company, Altius Health Plans, Inc. ("Altius"), denied coverage for

Laura's stay in a residential treatment program. The district court, finding that

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

Appellants' health insurance policy did not include coverage for residential treatment, granted Altius's motion for summary judgment. On appeal, Appellants argue that the district court erred in ruling that the complete exclusion of residential treatment programs from the Appellants' health insurance policy does not constitute an "inpatient or outpatient service limit" for mental health conditions. Appellants also contend that Utah's catastrophic mental health coverage statute, Section 31A-22-625 of the Utah Code ("Section 625"), requires Altius to provide coverage for residential treatment. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's order granting summary judgment to Altius.

## BACKGROUND

### I. Laura's Treatment

Altius provided health insurance coverage to Douglas and his family through his employer. The policy issued by Altius was a group health benefits plan ("the Plan") that is subject to the terms and requirements of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA"). The Plan previously covered various inpatient and outpatient treatments for depression and eating disorders for Douglas's minor daughter, Laura. One of Laura's medical providers suggested that her parents consider enrolling her in a private residential treatment facility, and her parents contacted Altius in the summer of 2004 to inquire about coverage for this treatment option. Altius

informed them that residential treatment was not a covered benefit under the Plan, and on July 24, 2004, Appellants received written confirmation that "residential treatment" was not covered under the terms of the Plan.

After Laura attempted suicide in October 2004, she was admitted to inpatient treatment, which was covered by Altius. After an extended inpatient stay, Laura's treating physicians suggested further inpatient treatment at another facility (which would have been covered by the Plan). Instead, Laura's parents decided to enroll her in a private residential treatment program at Avalon Hills, an out-of-network provider. Laura stayed at Avalon Hills for over three months at a cost of approximately $92,000.

Prior to, during, and subsequent to Laura's admission to Avalon Hills, Altius denied coverage for this residential treatment. Her family fully pursued the administrative appeals process with Altius, but Altius upheld its denial of benefits. Consequently, Appellants filed suit against Altius in the United States District Court for the District of Utah seeking reimbursement for the cost of Laura's residential treatment at Avalon Hills. The Appellants also requested declaratory relief, seeking a determination that Section 625 prohibited Altius from entirely excluding residential treatment from the Plan's coverage.

## II.     The Terms of the Plan

The Plan provides coverage for mental health care, including inpatient care, intensive outpatient therapy, and partial hospitalization, as well as short-term

detoxification, psychiatric care, and alcohol and other substance abuse rehabilitation. The Plan describes its mental health coverage and benefits as "provid[ing] outpatient and inpatient treatment for a wide variety of psychological, alcohol and substance abuse conditions for short-term evaluation, treatment, crisis intervention and detoxification." Aplt. Add., Ex. B., at D-086 (Member Handbook). According to the Plan, "[t]reatment may involve group, and/or individual outpatient sessions, and/or inpatient care." *Id.* For the Plan to pay for a benefit, the procedure or treatment must be both medically necessary *and* covered by the Plan.

The Plan provides coverage for 50% of the expenses for inpatient mental health and substance abuse treatment provided by a participating provider, after a mental health deductible has been met. Once the annual out-of-pocket maximums have been met, the Plan covers 100% of the costs of inpatient treatment for mental health conditions by participating providers. Outpatient services for mental health and psychiatric care require only a $25 co-pay per visit. However, the Plan does not cover mental health treatment provided by a non-participating provider. The Plan covers an unlimited number of inpatient days and outpatient visits for mental health conditions, subject only to the applicable deductibles, co-payments, and lifetime maximums.

As relevant here, the Plan specifically excludes from coverage "residential treatment programs." *Id.* at D-048 (Benefits, Copayments, Limitations &

Exclusions). However, the Plan makes clear that it must be construed to conform with Utah law. *See id.* at D-096 ("Any provision of the Group Service Agreement that is not in conformity with Chapter 8 of Title 31A, Rule R590-76, or other applicable law or regulation in the State of Utah shall not be rendered invalid, but shall be construed and applied as if it were in full compliance with the applicable laws and regulations of the State of Utah.").

## III.   Section 625

Utah, through Section 625, requires insurers to offer catastrophic mental health coverage to large employers.[1]  Utah Code § 31A-22-625(3)(a).  Section 625, which is entitled "Catastrophic coverage of mental health conditions," defines "Catastrophic mental health coverage" as follows:

> coverage in a health insurance policy or health maintenance organization contract that does not impose any lifetime limit, annual payment limit, episodic limit, inpatient or outpatient service limit, or maximum out-of-pocket limit that places a greater financial burden on an insured for the evaluation and treatment of a mental health condition than for the evaluation and treatment of a physical health condition.

Utah Code Ann. § 31A-22-625(1)(a)(i) (2005).[2]

In other words, Section 625 requires insurers to offer catastrophic mental

---

[1]     It is undisputed that Douglas's employer was a "large employer" as defined in the statute.

[2]     Subsequent amendments to this subsection substituted "health benefit plan" for "health insurance policy," deleted "or health maintenance contract," and replaced "any lifetime limit" with "a lifetime limit." *Compare* Utah Code Ann. § 31A-22-625(1)(a)(i) (2005) *with* Utah Code Ann. § 31A-22-625(1)(a)(i) (2010).

health coverage that does not impose a heavier financial burden for mental health conditions than for physical health conditions with respect to specified categories of limits–*viz.*, lifetime, annual payment, episodic, inpatient or outpatient service, and maximum out-of-pocket.

## IV. Proceedings Before the District Court

Before the district court, the parties filed cross-motions for summary judgment and asked the district court to interpret Section 625's potential impact on the Plan's terms. Appellants argued that Section 625's requirements amended the Plan and thereby required Altius to cover Laura's residential treatment because the Plan would provide coverage for skilled nursing facility care for physical ailments—which Appellants argued was the physical health equivalent to residential treatment for mental health conditions. In response, Altius argued that the plain language of Section 625 requires insurers to provide only catastrophic mental health coverage and it did not mandate or require coverage for specific kinds of treatments.

In granting Altius's motion for summary judgment, the district court ruled that Section 625 meets the two-pronged test of *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003), and is thus saved from ERISA preemption.[3] The district court then held that Section 625 did not amend the

---

[3] Altius did not cross-appeal this aspect of the district court's decision. Although Altius briefly argues that we are "free to address the pre-emption issue and decide the merits of the case on that basis should [we] be so inclined,"

Plan's terms so as to require Altius to cover Laura's residential treatment.

Before the district court, "Plaintiffs argue[d] that because the Utah Catastrophic Mental Health Coverage Statute prohibits any disparity between the inpatient and outpatient service *limits* for physical and mental health coverage, this means that [Altius] cannot *exclude* residential treatment from coverage under the Plan." Aplt. App. at 231 (Dist. Ct. Order, dated June 9, 2009). Unpersuaded by this argument, the district court explained that Section 625 does not prevent Altius from excluding residential treatment "as long as the lifetime limit, annual payment limit, episodic limit, inpatient or outpatient service limit, and maximum out-of-pocket limit do not place a greater financial burden on an insured for the evaluation and treatment of a mental health condition than for . . . a physical health condition." *Id.* at 232. Finally, the district court concluded that Altius's wholesale exclusion of residential treatment did not impose an "inpatient or outpatient service" limit. *Id.* Consequently, in granting Altius's motion for summary judgment, the district court found that Section 625 did not amend the terms of the Plan to require Altius to cover Laura's residential treatment at Avalon Hills. This appeal followed.

## DISCUSSION

### I. Standard of Review

Aplee. Br. at 10 n.3, we decline this invitation because neither party briefed this issue to us and it is unnecessary to reach this issue to resolve this appeal.

We review a grant of summary judgment de novo, applying the same legal standard used by the district court. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1311 (10th Cir. 2009). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

The central, overarching issue presented on appeal is a question of statutory interpretation, a purely legal question; consequently, it is subject to de novo review. *See Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1245 (10th Cir. 2009). "Moreover, '[i]n exercising *de novo* review we afford no deference to the district court's interpretation of state law.'" *Thomson*, 584 F.3d at 1312 (alteration in original) (quoting *Devery Implement Co. v. J.I. Case Co.*, 944 F.2d 724, 727 (10th Cir. 1991)). "[W]e interpret state laws according to state rules of statutory construction." *Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007) (quoting *Ward v. Utah*, 398 F.3d 1239, 1248 (10th Cir. 2005)) (internal quotation marks omitted).

On appeal, Appellants argue that "the Utah statute requires that the insurer provide coverage for treatment of mental health conditions that imposes no greater a financial burden on insureds than for treatment of physical health

conditions."[4]  Aplt. Opening Br. at 16.  "When the federal courts are called upon

to interpret state law, the federal court must look to the rulings of the highest

state court, and, if no such rulings exist, must endeavor to predict how that high

court would rule."  *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070,

1077 (10th Cir. 2007) (quoting *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir.

2002)) (internal quotation marks omitted); *see Kokins v. Teleflex, Inc.*, __ F.3d

__, No. 08-1272, 2010 WL 4009732, at * 2 (10th Cir. Oct. 14, 2010) ("To

properly discern the content of state law, we must defer to the most recent

decisions of the state's highest court." (quoting *Wankier v. Crown Equip. Corp.*,

353 F.3d 862, 866 (10th Cir. 2003)) (internal quotation marks omitted)).

## II.    Plain Language

"When interpreting a statute, [the Utah Supreme Court] seek[s] to give

effect to the purpose and intent of the legislature."  *Hoyer v. State*, 212 P.3d 547,

553 (Utah 2009) (citing *Grappendorf v. Pleasant Grove City*, 173 P.3d 166, 168

(Utah 2007)).  "To that end, [Utah courts] begin by examining the statute's plain

language."  *Id.*  In examining the plain language of the statute, courts "consider

---

[4]        Appellants frequently overstate the overall impact of the residential treatment exclusion on coverage for Laura's mental health condition.  *See, e.g.*, Aplt. Opening Br. at 18 ("Altius does not provide coverage for Laura's mental health treatment at all."); *id.* ("Altius refused to provide any coverage for Laura's treatment."); *id.* (Altius is "free to completely exclude coverage for mental health care."); *id.* at 15 ("Altius's exclusion is a complete bar to benefits.").  While it is true that the Plan provided no coverage for Laura's residential treatment at Avalon Hills, Altius previously covered various inpatient and outpatient treatment expenses for Laura's depression and eating disorders.

the literal meaning of each term and 'avoid interpretations that will render portions of a statute superfluous or inoperative.'" *Grappendorf*, 173 P.3d at 169 (quoting *Hall v. State Dep't of Corr.*, 24 P.3d 958, 963 (Utah 2001)). "One of the cardinal principles of statutory construction is that the courts will look to the reason, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute dealing with the subject." *Longley v. Leucadia Fin. Corp.*, 9 P.3d 762, 766 (Utah 2000) (quoting *Mountain States Tel. & Tel. Co. v. Payne*, 782 P.2d 464, 466 (Utah 1989)) (internal quotation marks omitted).

Utah law has made clear that insurance policies are read as contracts. *Quaid v. U.S. Healthcare, Inc.*, 158 P.3d 525, 527 (Utah 2007). If the language of the policy is unambiguous, the parties' intent should be determined from "the plain meaning of the contractual language." *Id.* (quoting *Benjamin v. Amica Mut. Ins. Co.*, 140 P.3d 1210, 1213 (Utah 2006)) (internal quotation marks omitted). "Courts interpret words in insurance policies according to their usually accepted meanings and in light of the insurance policy as a whole." *Bear River Mut. Ins. Co. v. Williams*, 153 P.3d 798, 801 (Utah Ct. App. 2006) (quoting *Utah Farm Bureau Ins. Co. v. Crook*, 980 P.2d 685, 686 (Utah 1999)) (internal quotation marks omitted). "Insurers 'may exclude from coverage certain losses by using language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided.'" *Crook*, 980 P.2d at 686 (quoting *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d

1272, 1275 (Utah 1993)). "Exclusions from coverage are interpreted no differently when the policy language is clear." *Quaid*, 158 P.3d at 527.

Section 625 requires all insurers to offer a catastrophic mental health coverage option to large employers. Utah Code § 31A-22-625(3). The plain language of Section 625 requires insurers to offer catastrophic mental health coverage that does not impose different limits for mental health conditions than for physical health conditions with respect to the following specified limits: lifetime, annual payment, episodic, inpatient or outpatient service, and maximum out-of-pocket.

The term "limit" is defined as "[a] restriction or restraint," "[a] boundary or defining line," or "[t]he extent of power, right, or authority." Black's Law Dictionary 1012 (9th ed. 2009). While Section 625 restricts insurers from imposing different limits for mental and physical health conditions, it is completely silent on the question of whether an insurance company may *exclude* from its coverage certain treatment options. Instead, Section 625 merely states that the insurance company may not set different "limits" or boundaries of coverage for the specified categories, including inpatient and outpatient service.

Consequently, as most relevant here, the plain language of the statute only requires the Plan to provide financial parity with respect to inpatient or outpatient service limits for mental and physical health conditions. The Plan covers an *unlimited* number of inpatient days and outpatient visits for mental health

conditions, subject only to applicable deductibles, co-payments, and lifetime maximums. Aplt. Add., Ex. B, at D-049 to D-050. Thus, it cannot be said that the Plan restricts or otherwise derogates inpatient or outpatient service limits for mental health conditions, much less does so in a way that places a comparatively greater financial burden on insureds with such conditions than on insureds with physical health conditions. Therefore, it is clear from the Plan's pellucid language that Altius is in compliance with Section 625's mandate.

An "exclusion" is "[a]n insurance-policy provision that excepts certain events or conditions from coverage." Black's Law Dictionary, *supra*, at 646. Relevant here, the Plan states that residential treatment plans are excluded from coverage. Appellants do not contend that the exclusion was unclearly stated or ambiguous. Instead, they argue that by excluding one method of treatment for Laura's mental health problems, i.e., residential treatment, Altius was imposing a greater financial burden on her family than if she were being treated for a physical condition.[5] However, this argument ignores the context surrounding the requirement in the statute, *viz.*, that a greater burden cannot be placed on a

---

[5] Appellants also argue that Laura's treatment was medically necessary and met the criteria set out in the *statute* for coverage. However, this argument ignores the provision of the Plan that requires a treatment to be *both* medically necessary *and* covered by *the Plan* in order for payment to be made. As Altius highlights, it is undisputed that Altius previously covered and paid for significant inpatient and outpatient treatment related to Laura's mental health problems and would have continued to do so if Appellants had chosen a treatment option covered by the Plan. However, as discussed *infra*, Section 625 does not require every health insurer to cover *all* medically necessary treatment.

beneficiary *with respect to* the specifically enumerated limits set out in the statute.

The statute does not, as Appellants' argument seems to suggest, require across-the-board parity between treatment options for mental and physical health conditions; it merely requires parity with respect to the enumerated categories of limits. The statutory obligation that a greater financial burden not be placed on an insured with respect to mental health conditions is necessarily modified by the specific categories of limits listed in Section 625. The plain language of Section 625 and the Plan make clear that Altius was authorized to deny coverage for Laura's stay at Avalon Hills.

## III. Utah Knows How to Mandate Coverage for Certain Treatments

Moreover, if the Utah legislature intended to mandate coverage for a certain type of treatment, the Utah legislature was fully aware of how to accomplish this goal. Other Utah statutes do precisely what Section 625 does *not*—that is, mandate coverage for certain types of treatment. For example, Section 31A-22-626 of the Utah Code, which addresses the requirements of insurance coverage for diabetes, specifically provides coverage for certain types of diabetes treatments, while including language similar to that of Section 625 regarding limits, deductibles, and coinsurance.[6] *See* Utah Code §

---

[6]    Section 31A-22-626 of the Utah Code reads in relevant part:

(2)   The   commissioner   shall   establish,   by   rule,   minimum

- 13 -

31A-22-626(2)–(3).  The Utah legislature also enacted Section 31A-22-630 of the

Utah Code, which requires insurance plans that offer medical and surgical

benefits for mastectomies to also cover "reconstruction of the breast on which the

> standards of coverage for diabetes for accident and health insurance policies that provide a health insurance benefit before July 1, 2000.
> (3) In making rules under Subsection (2), the commissioner shall require rules:
>> (a) with durational limits, amount limits, deductibles, and coinsurance for the treatment of diabetes equitable or identical to coverage provided for the treatment of other illnesses or diseases; and
>> (b) that provide coverage for:
>>> (i) diabetes self-management training and patient management, including medical nutrition therapy as defined by rule, provided by an accredited or certified program and referred by an attending physician within the plan and consistent with the health plan provisions for self-management education . . .
>>>
>>>> . . .
>>> . . . and
>>> (ii) the following equipment, supplies, and appliances to treat diabetes when medically necessary:
>>>> (A) blood glucose monitors . . . ;
>>>> (B) test strips for blood glucose monitors;
>>>> (C) visual reading urine and ketone strips;
>>>> (D) lancets and lancet devices;
>>>> (E) insulin;
>>>> (F) injection aides . . . and infusion delivery systems;
>>>> (G) syringes;
>>>> (H) prescriptive oral agents for controlling blood glucose levels; and
>>>> (I) glucagon kits.

Utah Code Ann. § 31A-22-626(2)–(3).

mastectomy has been performed," reconstructive surgeries to restore symmetrical appearance, and prostheses. Utah Code Ann. § 31A-22-630(1)(a)–(c).

These examples bolster our conclusion that the plain language of Section 625 does not require coverage for residential treatment programs because the Utah legislature was fully aware of how to mandate coverage for specific benefits when it intended to do so. There is no such mandate of coverage for specific benefits within Section 625, and it contradicts the plain language of Section 625 to import such a requirement.

## IV. Legislative History

Finally, Altius argues that interpreting Section 625 to mandate coverage for residential treatment care would be inconsistent with the legislative intent as expressed in the Act's legislative history. *See* Aplee. Br. at 30–33. Altius acknowledges that the plain language is the best indicator of legislative intent, but argues that the legislative history "demonstrates that the Legislature did not intend to require health insurers to cover all possible types of treatment." *Id.* at 30.

Utah case law, however, makes clear that it is only appropriate to turn to legislative history and relevant policy considerations when the statutory language is ambiguous or unclear. *See, e.g.*, *Heber Light & Power Co. v. Utah Pub. Serv. Comm'n*, 231 P.3d 1203, 1209 (Utah 2010) ("[I]f we find ambiguity in the statute's language, we look to legislative history and other policy considerations

for guidance." (alteration in original) (quoting *Summit Water Distrib. Co. v. Summit Cnty.*, 123 P.3d 437, 442 (Utah 2005)) (internal quotation marks omitted)); *Harvey v. Cedar Hills City*, 227 P.3d 256, 260 (Utah 2010) ("If the language is unambiguous, we confine our interpretation to the words of the . . . statute[]. We 'seek guidance from the legislative history and relevant policy considerations' only if the statutory language is ambiguous or unclear." (footnotes omitted) (quoting *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994))); *Mecham v. Frazier*, 193 P.3d 630, 632 (Utah 2008) ("Only if we find some ambiguity [in the statute's plain language] need we look further, and only then need we seek guidance from the legislative history and relevant policy considerations." (alteration in original) (footnotes omitted) (internal quotation marks omitted)). Because Section 625 is unambiguous, it is unnecessary to examine the legislative history referenced by Altius.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order granting Altius's motion for summary judgment.


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge


- 16 -