In re Parental Rights of Consuela
CASTILLO.

No. 17207.

Supreme Court of Utah.

July 7, 1981.

Barrie A. Vernon, Tooele, for appellant.

David L. Wilkinson, Salt Lake City, Franklyn B. Matheson, Ronald L. Elton, Tooele, for respondent.

CROCKETT, Retired Justice:

This is an appeal taken on behalf of Consuela Castillo from an order of the juvenile court permanently depriving her of parental rights in her two illegitimate children, B____ P____ (B. 5–31–71, thus now ten years of age), and T____ C____ (B. 4–13–74, and thus now seven years of age).

On appellant's behalf, it is contended that the juvenile court failed to give adequate recognition to the parent's rights in her children, of which it is asserted (1) that "she cannot be deprived unless there is a substantial departure from the norm under circumstances seriously detrimental to them"; and (2) that "this requires the Division of

Family Services to show that it has exhausted possible alternate remedies."

The mother Consuelo, native of Guatemala, came to the United States 11 years ago; lived in Rhode Island, New York, back in Guatemala, then California and in Utah. She first came to the attention of the Division of Family Services, Tooele office, in March of 1971 as a public assistance applicant when she was pregnant with her first child. She has been on public assistance since that time, and most of the time in rest homes. In April, 1974, she gave birth to her second illegitimate child. The children have been in foster care provided by Family Services since 1974. Appellant has seen her children on visits once or twice a month.

The evidence is practically without dispute in support of the trial court's findings, summarized as follows:

Appellant is incompetent by reason of mental illness for which there is no reasonable expectation of cure. It can be controlled only if she receives medication three times a day, is maintained in a nonstressful environment and receives ongoing therapy. She is incapable of living on her own or meeting her own needs outside of the nursing home. If the above treatment is not maintained she engages in extremely bizarre behavior and becomes totally dependent upon others. Because of her condition she must continue to live in the nursing home; and it is impossible for her to care for her children now or in the foreseeable future.

Both children are emotionally disturbed due to past traumatic experiences with their mother and a lack of stability and security. Neither child has a positive bonding (love or affection) for their mother.

On the basis of those facts the court ordered termination of appellant's parental rights; that guardianship of the children be continued with the Division of Family Serv-ices for placement in a suitable adoptive home; and that the children receive whatever therapy is necessary to assist them to a healthy emotional adjustment in a stabilized home situation.

■ In addressing appellant's contentions, we note our agreement with certain propositions essayed on her behalf. The first is that we have no reservation in agreeing that a child is not a mere pawn of the state to be dealt with solely on the basis of what public officials, or even the courts, may believe to be in a child's best interest, without giving most serious consideration to the rights of the natural parent in his child. High among the ideals of individual liberty which we consider essential in our free society are those which protect the sanctity of one's home and family.[1]

It is true that in controversies involving the well-being of children, this Court and others have frequently said that the best interest of children is of paramount importance.[2] We can see no useful purpose here in rediscussing our various cases dealing with the problem. It is deemed sufficient to say in summary that we are not aware that this Court has ever espoused the view, and it is not our view, that the termination of parental rights can be decreed without giving serious consideration to the prior and fundamental right of a parent to rear his child; and concomitantly, of the right of the child to be reared by his natural parent.

■ It is a matter of such common knowledge as to hardly require expression that it is in accordance with the natural instincts and customs of mankind that in most instances the interests of a child are best served by being in the custody of his natural parents. As was long ago aptly stated by the much-respected Chancellor Kent: " . . . the voice of nature has pointed

1. See discussion and authorities cited in the excellent opinion of Justice Gene B. Daly, Mont., *In the Matter of Inquiry into J. L. B., etc.*, 594 P.2d 1127, for which opinion we appreciate guidance in this case; *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551, citing *Meyer v. Nebraska*, 262 U.S. 390, 43

S.Ct. 625, 67 L.Ed. 1042, *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655.

2. See, e. g., *Walton v. Coffman*, 110 Utah 1, 169 P.2d 97; *Miller v. Miller*, 8 Utah 2d 290, 333 P.2d 945.

out the natural parent as the most fit and proper person" to rear his own child.[3]

The law therefore indulges a strong presumption to that effect;[4] and therefore, whatever may have heretofore been said about the burden of proof in such matters, due to the nature of that presumption, we think it should be overcome only by clear and convincing evidence.[5] In this case, that standard is met because the facts recited herein are established without any substantial dispute.

In full awareness of what has just been said, it is further to be observed that when it plainly appears that there is such failure, or deficiency, in the parent-child relationship that the values inherent therein are almost entirely absent, the law recognizes the need and provides a means for the termination of parental rights.[6] It is not without some compunction that it is necessary to recognize that circumstances justifying the termination of parental rights sometimes come into being, not only from wilful acts or neglect of the parent, but also when it is clearly demonstrated that there is a lack of capacity to serve the purposes of parenthood.[7] It is neither necessary nor desirable to ascribe to appellant any moral guilt. The blight on the lives of the children and the baneful effects from failure to correct it are just as real, whether resulting from voluntary acts, or from innate deficiencies. And further, when it appears that there is such failure, neither the interests of the individuals involved, nor of the public, are best served by having the children remain permanently as public charges.[8] One of the important factors to be considered is that prospects for placement of these children for adoption continue to diminish as time passes.

On the basis of the record, which amply supports his findings, a capable and conscientious judge, who has had many years of experience in such matters, has concluded that there is no realistic prospect of any beneficial parenting of these children by the appellant, and that the desirable objectives for all concerned will best be served by terminating that relationship and thus opening the way for a favorable adoption.

Affirmed. No costs awarded.

HALL, STEWART, HOWE and OAKS, JJ., concur.

MAUGHAN, C. J., did not participate herein.

CROCKETT, Retired Justice, sat.

---

3. Kent's Commentaries, Vol. II, p. 196.

4. See Sec. 55–10–100(18), U.C.A., 1953; *State v. Lance*, 23 Utah 2d 407, 464 P.2d 395, *State, ex rel. Winger*, Utah, 558 P.2d 1311.

5. See discussion and citation of authorities in *In the Matter of Inquiry into J. L. B., etc.*, Mont., footnote 1 above.

6. Sec. 78–3a–48(1) provides: "The court may decree a termination of all parental rights with respect to one or both parents if the court finds: (a) That the parent or parents are unfit or incompetent by reason of conduct or condition seriously detrimental to the child...." This case was decided before the effective date of S.L.U.1980, Chapter 40, which amended that section.

7. See *State In Interest of R___ J___*, Utah, 589 P.2d 244; *In Re Jennings*, 20 Utah 2d 50, 432 P.2d 879 is a case of quite comparable facts where this court approved permanent deprivation of parental rights.

8. *In re Dade*, 14 Utah 2d 47, 376 P.2d 948, see statement concerning desirability of correcting maladjustment in present generation to prevent its continuance in this and succeeding generations.