**2017 UT App 118**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF Z.J. AND Z.J.,
PERSONS UNDER EIGHTEEN YEARS OF AGE.

C.J.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Per Curiam Opinion
No. 20170424-CA
Filed July 20, 2017

Third District Juvenile Court, Salt Lake Department
The Honorable Kimberly K. Hornak
No. 1132272

Colleen K. Coebergh, Attorney for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

Before JUDGES GREGORY K. ORME, J. FREDERIC VOROS JR., and
JILL M. POHLMAN.

PER CURIAM:

¶1     C.J. (Father) appeals the termination of his parental rights
to Z.J. and Z.J. We affirm.

¶2     "Whether a parent's rights should be terminated presents
a mixed question of law and fact." *In re B.R.*, 2007 UT 82, ¶ 12,
171 P.3d 435. "Because of the factually intense nature of such an
inquiry, the juvenile court's decision should be afforded a high
degree of deference." *Id.* "Thus, in order to overturn the juvenile
court's decision the result must be against the clear weight of the

evidence or leave the appellate court with a firm and definite conviction that a mistake has been made." *Id.* (citation and internal quotation marks omitted). Further, "[w]hen a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *Id.*

¶3 "Utah law requires a court to make two distinct findings before terminating a parent-child relationship." *In re R.A.J.*, 1999 UT App 329, ¶ 7, 991 P.2d 1118. "First, the court must find that the parent is below some minimum threshold of fitness, such as finding that a parent is unfit or incompetent based on any of the grounds for termination" in Utah Code section 78A-6-507. *Id.* (citation and internal quotations marks omitted). "Second, the court must find that the best interests and welfare of the child are served by terminating . . . parental rights." *Id.*

¶4 Father does not challenge any of the grounds for termination of his parental rights found by the juvenile court. Father instead challenges only the juvenile court's best interest finding. Specifically, Father claims that "his lapse in involvement in the case" was not a substitute for proof that he cannot parent and that the juvenile court "failed to adequately consider the importance of his biological relationship" with the children and "the right to familial association."

¶5 "If appellant intends to urge on appeal that a finding or conclusion is unsupported by or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to such finding or conclusion." Utah R. App. P. 54(b). Father has not provided a transcript of the termination trial. Absent an adequate record on appeal, this court cannot address the adequacy of the evidentiary support for the juvenile court's findings and must "assume the regularity of the proceedings below." *In re K.L.S.*, 2015 UT App 51, ¶ 5, 345 P.3d 1281 (per curiam) (citation and internal quotation marks omitted). Because Father did not provide a transcript, we assume that the court's factual findings are supported by sufficient evidence. Thus, we

consider only whether the court's findings are legally sufficient to support its best interest determination. The following findings are relevant to that issue.

¶6 On July 5, 2016, the Division of Child and Family Services (DCFS) received a referral of child endangerment against the children's mother (Mother) regarding twins Z.J. and Z.J. Within a few days, Mother gave birth to a younger sibling, who tested positive for methamphetamine and amphetamine at birth. Mother also tested positive for methamphetamine, amphetamine, and THC. On July 12, 2016, DCFS obtained a warrant for removal of all three children, although child protection workers initially were unable to locate the twins. DCFS also was unsuccessful in its efforts to locate Father.

¶7 During the child welfare case and the resulting termination of parental rights case, Father resided in Ohio and did not enter Utah. Father participated in several hearings and the termination trial by telephone and through his counsel. On August 29, 2016, the juvenile court adjudicated the State's petition for custody, finding that the children were neglected by Mother and dependent as to Father and therefore within juvenile court jurisdiction. Father had a lengthy criminal history dating from 2009. Father also had several active warrants and pending charges in Utah. The juvenile court ordered reunification services for Mother in Utah and ordered an Interstate Compact on the Placement of Children (ICPC) investigation on Father in Ohio. At a six-month review hearing on January 5, 2017, the juvenile court was informed that Ohio had not approved an ICPC to allow the children to be placed with him due to his criminal history and outstanding warrants. At the time of the permanency hearing held on February 2, 2017, Father had not returned to Utah to resolve the outstanding warrants so as to pave the way for the children to be placed with him. The juvenile court terminated Mother's reunification services and changed the permanency goal to adoption.

¶8 Following the termination trial, the juvenile court found that Father left the children in Utah in 2015 and moved to Ohio. The court found that Father testified that he sent some money to Mother for support but that it was not consistent. Since August 2016—when the adjudication order was entered—Father "ha[d] not come to Utah, ha[d] not visited the children and did not pass an ICPC check of his situation [or] pass a home study." The court also noted that Father testified that he would still need a couple of months to get his life in order before he could provide care for the children. The juvenile court found,

> It would be in the children's best interests to be adopted where they will be secure, stable, and protected from further abuse and neglect and where their physical and emotional needs are being met. They are in a legal risk home where they are bonded, doing well and the family wants to adopt them.

The juvenile court concluded that it was in the best interest of the children to terminate parental rights, and it was "strictly necessary" to do so in order to allow the children to be adopted.

¶9 "Determining a child's best interest in termination of parental rights proceedings is a subjective assessment based on the totality of the circumstances." *In re G.J.C.*, 2016 UT App 147, ¶ 24, 379 P.3d 58. Therefore, "evidence that proves one or more statutory grounds for termination of parental rights may also constitute evidence demonstrating that termination is in the child's best interest, but the court's focus should be on the impact of termination on the child." *Id.* ¶ 25. "And legally, [i]f the parent-child relationship has been destroyed by the parent's conduct, or lack of conduct, it is usually in the best interest of the child to terminate that relationship." *Id.* (alteration in original) (citation and internal quotation marks omitted). Thus, "although the requirement of bifurcated analysis is clearly established by statute and jurisprudence as a practical matter, where grounds

for termination are established, the conclusion that termination will be in [a child's] best interest follows almost automatically." *Id.* (alteration in original) (citation and internal quotation marks omitted).

¶10 Father concedes that he has not seen the children since 2015, that he provided only inconsistent financial support, that an ICPC placement was not approved, and that he was not in a position to provide care for the children at the time of the termination trial. Father refers to his inaction as merely a "lapse in involvement in this case that is not an adequate substitute for proof that he cannot parent." That claim lacks merit, especially given the undisputed ground for termination that he abandoned the children. Whether he might conceivably be able to parent a child is a hypothetical question that this court is not required to reach. Similarly, Father's argument that the juvenile court "failed to adequately consider the biological relationship" between Father and his children lacks merit.

¶11 Father has not demonstrated that the best interest determination was not amply supported. In addition, Father's claim that "the right to familial association" was not properly considered lacks merit. Given the complete absence of any evidence of a viable parent-child relationship, "it is proper, in the context of a best-interest determination, for the court to consider the child's bond with caregivers, their need for permanency and stability, and the potential risk of harm if returned to the parents' care." *See id.* ¶ 24. Here, the juvenile court's findings and conclusions demonstrate its consideration of these relevant factors and the propriety of its decision.

¶12 Affirmed.

———————