*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2020 UT 36**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

In the Interest of B.T.B. and B.Z.B.,
children under 18 years of age.

B.T.B. and B.Z.B, with J.P.B,
*Petitioner and Cross-Appellees,*

*v.*

V.T.B.,
*Respondent and Cross-Appellant.*

No. 20180805
Heard January 15, 2020
Filed June 22, 2020

On Certiorari to the Utah Court of Appeals

Fifth District, Washington County
The Honorable Judge Michael F. Leavitt
Nos. 1142575, 1142576

Attorneys:[1]

Martha Pierce, Salt Lake City, Guardian ad Litem
for B.T.B. and B.Z.B., petitioners and cross-appellees

LaMar J. Winward, St. George, for joinder J.P.B.,
petitioner and cross-appellee

J. Robert Latham, St. George, for V.T.B., respondent
and cross-appellant

---

[1] Amicus Curiae: Sean D. Reyes, Att'y Gen., Carol L. C. Verdoia, John M. Peterson, Asst. Att'y Gens., Salt Lake City, for State of Utah and Division of Child and Family Services; Kristin H. Norman, Margaret P. Lindsay, Salt Lake City, for Parental Defense Alliance.

In re B.T.B and B.Z.B.

Opinion of the Court

---

JUSTICE PEARCE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PETERSEN joined.

---

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1    The mother (Mother) of two children, B.T.B. and B.Z.B., asked the juvenile court to terminate the parental rights of the children's biological father (Father). To resolve the petition, the juvenile court followed the statutory framework the Legislature created to decide when the power of the State can be used to sever the legal bond between parent and child.

¶2    The Termination of Parental Rights Act (Act) first requires that a juvenile court find, by clear and convincing evidence, that one or more of several specifically listed grounds for termination is present. *See* UTAH CODE § 78A-6-506, -507. The juvenile court here found multiple grounds, including that Father had abandoned and neglected his children. The juvenile court then, in compliance with the statutory framework, concluded that terminating Father's parental rights was in B.T.B.'s and B.Z.B.'s best interest.

¶3    The juvenile court next addressed a relatively new addition to the statutory scheme: a legislative mandate that termination occur only when it is "strictly necessary" to terminate parental rights. *See* UTAH CODE § 78A-6-507(1). The juvenile court rejected Father's argument that termination can only be strictly necessary when it is prelude to an adoption. And it found that termination was strictly necessary because Father's inconsistent presence in the lives of the children "will continue to damage" them.

¶4    Father appealed that ruling to the court of appeals, arguing that the juvenile court had not properly interpreted the termination statute. *In Interest of B.T.B.*, 2018 UT App 157, ¶ 1, 436 P.3d 206. The court of appeals clarified the analysis the juvenile court should have employed and remanded to the juvenile court to re-examine the question under the clarified analysis. *Id.* ¶ 63.

¶5    The children's guardian ad litem (GAL) petitioned us to review the court of appeals' decision, arguing that the court of appeals misinterpreted the statute. The GAL also contends that the court of appeals improperly overruled a line of its cases that stood for the proposition that once statutory grounds for termination are found, it follows "almost automatically" that termination is in a

child's best interest. Father cross-petitioned, complaining that the court of appeals had misinterpreted the strictly necessary requirement. We granted both petitions.

¶6   We reject the GAL's argument that the court of appeals inappropriately clarified its case law. And we largely agree with the court of appeals' statutory analysis. But we add our own observations about the statute and take the opportunity to clarify a couple of points in response to concerns the GAL and the Utah Division of Child and Family Services (DCFS) (which we invited to file an amicus brief) have raised about how the court of appeals opinion might be interpreted. Ultimately, we affirm the court of appeals' decision to remand to the juvenile court so it may re-examine the termination petition in light of the clarified standard.

## BACKGROUND[2]

¶7   Mother and Father are the parents of B.T.B. and B.Z.B. The couple married in 2010, separated in 2012, and divorced the following year. Since that time, Father has been repeatedly incarcerated. Between June 2012 and the 2017 termination petition, Father visited his children only a handful of times. Although Father's incarceration explains some of that absence, Father never wrote or otherwise attempted to contact his children from prison. Except for a single occasion when he attempted to give Mother $400 cash, Father has not paid child support.

¶8    In 2017, Mother petitioned the juvenile court to terminate Father's parental rights. The Office of Guardian ad Litem represented the children's interests in the termination proceedings.

¶9    After an evidentiary hearing, the juvenile court found that Mother had proven by clear and convincing evidence that Father had abandoned the children, had made only token efforts to support or communicate with the children, had neglected the children, and was an unfit parent. In addition, the court found that it was in the children's best interest for Father's parental rights to be terminated. The juvenile court took note of the requirement that the termination be "strictly necessary" and found that it was strictly necessary to terminate Father's parental rights because Father's "inconsistent parent time, and expectations of the [children] that accompany it,

---

[2] We recite the facts in the light most favorable to the trial court's decision. *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 72, 99 P.3d 801.

will continue to damage" the children. The court then terminated Father's parental rights in B.T.B. and B.Z.B.

¶10 Father appealed the termination order, arguing that the juvenile court misapplied the Act's strictly necessary requirement. *In Interest of B.T.B.*, 2018 UT App 157, ¶ 1, 436 P.3d 206. Specifically, Father argued that by adding that language, the Legislature introduced a third element into the termination inquiry, such that the juvenile court needed to find: (1) that termination was strictly necessary; (2) that grounds for termination existed; and (3) that termination was in the child's best interest. *Id.* ¶ 33. Father also contended that termination can only be strictly necessary when the juvenile court is considering an adoption or similar change in the child's permanent living situation. *Id.* ¶ 56.

¶11 The court of appeals rejected Father's contentions. *Id.* ¶¶ 33, 46, 50, 56. It opined that a court should consider whether termination is strictly necessary as part of its analysis into the child's best interest. *Id.* ¶ 50. And it concluded that termination would be strictly necessary when it was "absolutely essential to the child's best interest that a parent's rights be permanently severed." *Id.* ¶ 54.

¶12 After soliciting supplemental briefing on the subject, the court of appeals took the opportunity to disavow its case law to the extent it suggested that when statutory grounds for termination are present, it follows "almost automatically" that termination will be in a child's best interest (the almost automatically cases). *Id.* ¶ 44. The court of appeals reasoned that this case law muddled the important distinction between the statutory grounds for termination and the court's examination into what outcome would promote a child's best interest. *See id.* ¶ 23. The court of appeals opined that the almost automatically cases were irreconcilable with the legislative mandate that a court examine whether termination is "strictly necessary." *Id.* ¶¶ 32, 37.

¶13 The court of appeals demonstrated that its concern about the almost automatically cases was more than an academic frolic. It noted that in at least two instances, court of appeals panels had relied on the almost automatically line of reasoning to hold that a *respondent*—meaning the parent whose rights were to be terminated—had failed to show why termination was not in the best interest of the child once the court had determined that a ground for termination existed. *Id.* ¶¶ 24–31 The *B.T.B.* court reasoned that this had effectively, and improperly, flipped the burden from the petitioner to the respondent. *Id.* ¶ 31.

¶14 The court of appeals then construed the balance of Father's arguments as a challenge to the juvenile court's best interest determination. *Id.* ¶ 59. The court of appeals reasoned that it had "clarified and reformulated" the analytical framework to comport with the statute and explained that the strictly necessary inquiry was part of the best interest analysis. *Id.* Because of this, "Father's arguments regarding 'strictly necessary,'" were really "a challenge to the juvenile court's conclusion that termination of his rights was in the Children's best interests." *Id.* And it remanded the case back to the juvenile court so that court could examine the question with the benefit of the clarified test. *Id.* ¶ 63.

¶15 The GAL, as well as Father, asked this court to review the court of appeals' decision. We granted the cross-petitions for writ of certiorari on the following questions:

> Whether the Court of Appeals erred in disavowing statements in its prior case law "to the extent they suggest that, once statutory grounds for termination are established, it follows 'almost automatically['] that termination will be in the best interest of a child, or that it is only in 'rare' or 'unusual' cases that termination of parental rights will not follow from a finding of statutory grounds for termination."

> Whether the Court of Appeals erred in its construction and application of the term "strictly necessary" in Section 78[A]-6-507(1) of the Utah Code.

> Whether the court of appeals erred in rejecting Cross-Petitioner'[s] argument that Section 78[A]-6-507(1) of the Utah Code includes a distinct requirement of a finding of strict necessity in addition to the requirements for findings of a ground for termination and the best interests of a child.

¶16 We invited amicus curiae briefs from DCFS and the Parental Defense Alliance of Utah.[3]

---

[3] We appreciate the excellent briefing and thoughtful input both amici provided.

**STANDARD OF REVIEW**

¶17 "On certiorari, we review for correctness the decision of the court of appeals . . . ." *Pulham v. Kirsling*, 2019 UT 18, ¶ 18, 443 P.3d 1217 (citation omitted) (internal quotation marks omitted).

**ANALYSIS**

I. The Statutory Framework

¶18 Before we discuss the parties' arguments, it is helpful to review the portions of the Act the court of appeals interpreted. A petition to terminate parental rights can be brought either by certain private parties or the State. UTAH CODE § 78A-6-504. Some requirements differ depending on how the process originates. *See, e.g., id.* § 78A-6-304. However, the statutes at issue here—Utah Code sections 78A-6-503, -506, and -507—apply to both private and public termination petitions.

¶19 Section 507 outlines how and when a court may terminate parental rights. In section 507, the Legislature lists a number of grounds for termination and mandates that a court find one of them present before it orders termination. These grounds include: abandonment of the child; neglect or abuse of the child; unfitness or incompetence of the parent; and a parent's voluntary relinquishment of her rights. *See id.* § 78A-6-507.

¶20 After a court finds that a statutory ground for termination exists, the Act requires a court to consider whether termination is in the child's best interest. *See id.* §§ 78A-6-503(12), -506(3). The Act also instructs that "the welfare and best interest of the child [is] of paramount importance in determining whether termination of parental rights shall be ordered." *Id.* §§ 78A-6-503(12), -506(3).

¶21 Section 506 outlines substantive and procedural requirements for termination proceedings. Subsection 506(3) states,

> The proceedings are civil in nature and are governed by the Utah Rules of Civil Procedure. The court shall in all cases require the petitioner to establish the facts by clear and convincing evidence, and shall give full and careful consideration to all of the evidence presented with regard to the constitutional rights and claims of the parent and, if a parent is found, by reason of the parent's conduct or condition, to be unfit or incompetent based upon any of the grounds for termination described in this part, the court shall then consider the welfare and best interest of the child of

paramount importance in determining whether termination of parental rights shall be ordered.

¶22 Although the Legislature invests courts with the authority to terminate parental rights in appropriate circumstances, the Legislature is not indifferent about how that power should be exercised. Subsection 503(12) instructs that "[w]herever possible, family life should be strengthened and preserved."

¶23 In 2012, the Legislature amended the Act in two significant ways; that is, it made termination of parental rights subject to two conditions. First, the Legislature made termination "[s]ubject to the protections and requirements of Section 78A-6-503." UTAH CODE § 78A-6-507(a); 2012 Utah Laws 1334. And second, a court would need to find that termination was "strictly necessary" before it could terminate a parent's rights. UTAH CODE § 78A-6-507(a); 2012 Utah Laws 1334.

¶24 As part of that amendment, the Legislature added an extensive list of requirements and policy declarations to section 503—the section that termination would now be "subject to." See UTAH CODE § 78A-6-503; 2012 Utah Laws 1333. For example, the Legislature declared that "a parent possesses a fundamental liberty interest in the care, custody, and management of the parent's child." UTAH CODE § 78A-6-503(1). The Legislature further opined that such a fundamental liberty interest "does not cease to exist simply because . . . a parent may fail to be a model parent" or because "the parent's child is placed in the temporary custody of the state." Id. § 78A-6-503(4). In what is perhaps the strongest statement of legislative policy, the amended Act provides that it "is in the best interest and welfare of a child to be raised under the care and supervision of the child's natural parents" and that "[a] child's need for a normal family life in a permanent home, and for positive, nurturing, family relationships is usually best met by the child's natural parents." Id. § 78A-6-503(8).

¶25 After listing eleven statements of legislative policy, the amended section 503 culminates in the section's original language which provides that if grounds for termination are found, "the court shall then consider the welfare and best interest of the child of

paramount importance in determining whether termination of parental rights shall be ordered." *Id.* § 78A-6-503(12).[4]

## II. The Court of Appeals' Interpretation of The Act

¶26 The court of appeals commenced its analysis by considering the two-part test for termination of parental rights "established by our legislature and our supreme court." *In Interest of B.T.B.*, 2018 UT App 157, ¶ 13, 436 P.3d 206. The court of appeals observed that a court must first find one of the statutory grounds for termination listed in section 78A-6-507. *Id.* It then noted that both sections 78A-6-503(12) and 78A-6-506(3) require that "even where statutory grounds are present, [courts] must still 'consider the welfare and best interest of the child of paramount importance in determining whether termination of parental rights shall be ordered.'" *Id.* ¶ 16 (citation omitted).

---

[4] After we heard oral arguments, the Utah Legislature amended the Act. *See* H.B. 33, 63d Leg. 2020 Gen Sess. (Utah 2020). No party has asked this court to consider the amendments nor argued that the amendments have any impact on the issues before us. We cite the version of these statutes in effect at the time of the petition. *See Harvey v. Cedar Hills City*, 2010 UT 12, ¶ 12, 227 P.3d 256 (noting that as "a general rule . . . we apply the version of the statute that was in effect at the time of the events" giving rise to the suit).

We highlight, however, that the Legislature amended section 507 to read, "Subject to the protections and requirements of Section 78A–6–503, and if the court finds termination of a parent's parental rights, *from the child's point of view*, is strictly necessary, the court may terminate all parental rights with respect to the parent if the court finds any one of the following: . . . ." *Id.* (emphasis added). As discussed below, the "from the child's point of view" language was likely borrowed from the court of appeals' decision in this matter. *Infra* ¶ 63.

The Legislature also added a subsection (b) to subsection 503(12) which reads, "In determining whether termination is in the best interest of the child, and in finding that termination of parental rights, from the child's point of view, is strictly necessary, the court shall consider, among other relevant factors, whether: (i) sufficient efforts were dedicated to reunification in accordance with Subsection 78A–6–507(3)(a); and (ii) the efforts to place the child with kin who have, or are willing to come forward to care for the child, were given due weight." *Id.*

¶27 The court of appeals next discussed the 2012 amendment that permits a court to terminate parental rights only if the court finds that termination is "strictly necessary." *Id.* ¶ 17. The court of appeals expressed concern that no court had yet examined how that addition impacts the established test. *Id.* ¶ 19. And it analyzed how the addition of that language "affected the historical two-part test for termination of parental rights." *Id.*

¶28  In so doing, the court of appeals addressed the correctness of a line of its own cases. *Id.* ¶¶ 20–44. Those cases suggested that once grounds for termination were found, it followed "almost automatically" that termination would be in the best interest of the child. *Id.* ¶ 20. The court of appeals noted that these cases had, in some instances, distorted the best interest analysis and shifted the burden of proof to the respondent. *Id.* ¶¶ 13, 24. Because it saw the almost automatically cases as inconsistent with the statutory language, the court of appeals disavowed them. *Id.* ¶ 44.

¶29  Then, "unconstrained by [this inconsistent precedent]," *id.* ¶ 45, the court of appeals addressed the strictly necessary language. The court of appeals held the strictly necessary language did not add a third prong to the test, as Father contended. *Id.* ¶ 46. The court of appeals opined that whether a particular termination was strictly necessary should be considered as part of the best-interest inquiry. *Id.* It stated that "[t]he 'best interest' test . . . is intended as a holistic examination of all of the relevant circumstances that might affect a child's situation," *id.* ¶ 47, including "whether termination of a parent's rights is actually necessary," *id.* ¶ 48.

¶30 The court of appeals indicated that to assess whether termination is strictly necessary, the statute "requires courts to explore whether other feasible options exist that could address the specific problems or issues facing the family, short of imposing the ultimate remedy of terminating the parent's rights." *Id.* ¶ 55. And it rejected Father's argument that termination could only be strictly necessary when an adoption or similar change in a child's permanent living situation is pending. *Id.* ¶ 56.

¶31 However, the court of appeals also noted the policy statements the Legislature added to section 503 in the 2012 amendment. The court of appeals concluded that in light of this legislative policy, "courts should not forget the constitutional dimension of the parental rights on the other side of the ledger." *Id.* ¶ 55. It then remanded to the juvenile court for reconsideration in light of its interpretation of the statutes. *Id.* ¶ 63.

¶32 With the statutory framework and the court of appeals' interpretation in mind, we review the issues presented on certiorari.

### III. The Court of Appeals Did Not Err in Disavowing the Almost Automatically Case Law

¶33 The GAL first argues that the court of appeals erred when it disavowed its almost automatically case law. And it claims that the court erred in two different ways. First, the GAL argues that it was not proper for the court of appeals to opine on the validity of the almost automatically case law because that issue was not before the court. Second, the GAL argues that the court of appeals incorrectly described the best interest inquiry in the course of analyzing that case law.

*A. The Court of Appeals Properly Addressed
the Almost Automatically Case Law*

¶34 According to the GAL, the vitality of the almost automatically cases was not properly before the court of appeals because the parties made only peripheral mention of that authority to the juvenile court. Moreover, claims the GAL, the juvenile court did not rely on the almost automatically cases to reach its decision. This prompts the GAL to contend that the court of appeals had no business picking fights with case law that was neither raised in the juvenile court proceedings nor the basis of the juvenile court's decision.[5]

¶35 In a gambit only someone on appellate Twitter could love, Father counters the GAL's preservation argument with a claim that the preservation question is outside the scope of our grant of certiorari. Father notes that Utah Rule of Appellate Procedure 49 provides that on certiorari "[o]nly the questions set forth in the petition or fairly included therein will be considered by the Supreme Court." UTAH R. APP. P. 49(a)(4). And Father uses that rule to argue that preservation is not a question fairly included within our grant of certiorari.

¶36 We have been less than impressed with arguments like those Father advances here. We have observed that on certiorari, "we review for correctness the decision of the court of appeals."

---

[5] Father faults the GAL for not objecting when the court of appeals asked for supplemental briefing on the almost automatically case law. Because we ultimately reject the GAL's argument, we need not address Father's concern that the GAL waived it.

*Pulham v. Kirsling*, 2019 UT 18, ¶ 18, 443 P.3d 1217 (citation omitted) (internal quotation marks omitted). "The correctness of the court of appeals' decision turns, in part, on whether it . . . correctly assessed preservation of the issues before it." *Id.* (alteration in original) (citation omitted). The GAL is therefore not prohibited from raising questions of preservation on certiorari. They are fairly included in the question on which we granted review.

¶37 Although properly before us, we dismiss the GAL's preservation concerns without breaking a sweat. The parties asked the court of appeals to interpret the Act. This required the court of appeals to decide what the Legislature meant when it added the words "strictly necessary" to the Act. In the course of doing that, the court of appeals observed that its case law might be at odds with the statutory mandate.

¶38 The court of appeals realized that the parties had not briefed the relationship between the almost automatically cases and the 2012 amendment to the Act, and it provided the parties an opportunity to address the question through supplemental briefing. After review of that briefing, the court of appeals decided it needed to disavow portions of its case law. The court of appeals acted correctly each step of the way.

¶39 The GAL is correct that "[w]hen a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach" it. *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443.[6] But even if the fleeting references

---

[6] The GAL relies on *Johnson* to argue that "[t]he court of appeals . . . dwell[s] on unpreserved issues going to best interests including the constitutional dimensions of best interests, its burden of proof, its burden of production, and the relevancy of best-interest evidence." However, in *Johnson* the appellant appealed his conviction based on two alleged errors. 2017 UT 76, ¶ 3. The court of appeals reversed Johnson's conviction based on a third error that the appellant had not raised. *Id.* ¶ 4. We determined that the court of appeals erred in reversing the conviction based on an error that was both unpreserved below and waived on appeal. *Id.* ¶ 63.

Here, the court of appeals addressed the issue Father raised on appeal. Father argued that that juvenile court had misapplied the Act, *In Interest of B.T.B.*, 2018 UT App 157, ¶ 45, and that "the juvenile court erred by determining that termination of his rights was in the Children's best interests or strictly necessary." *Id.* ¶ 58.

(continued . . .)

made to the almost automatically language in the juvenile court did not preserve the issue, the court of appeals recognized that its interpretation of the Act would be at loggerheads with its case law.

¶40 When interpreting a statute, a court is not bound to rely only on information the parties provide. Stated differently, the parties cannot force a court into a strained interpretation of a statute by the arguments they advance. A court's duty is to get the law right and parties cannot push us off that path.

¶41 To take an extreme example, the parties could not, by eschewing arguments based upon a statute's text, prevent the court from basing its interpretation on the statute's plain language. *See State v. Hatfield*, 2020 UT 1, ¶ 16, 462 P.3d 330 (describing that we start with a statute's plain language to understand its meaning). Similarly, a party cannot prevent the court from employing certain canons of construction by failing to argue them. *See State v. Garcia*, 2017 UT 53, ¶ 52, 424 P.3d 171 (holding that an appellate court was not deprived of the ability to employ a canon of interpretation because the party had not raised that canon in its briefing).

¶42 Here, in interpreting the Act, the court of appeals looked at how the language the Legislature added to the statute changed the law. *In Interest of B.T.B.*, 2018 UT App 157, ¶¶ 19–20. And it questioned whether some of its case law could coexist with the amended Act. *Id.* ¶¶ 20–22. After comparing the almost automatically cases with the statutory language, the court of appeals determined that those cases were inconsistent with the Act. *See id.* ¶ 44. To remedy that, the court of appeals disavowed those cases *to the extent* they conflicted with the statute. *Id.* This is what we want our courts to do. We therefore disagree with the GAL that the court of appeals was barred from addressing the almost automatically line of cases.[7]

---

The court of appeals opinion discusses just that—whether the juvenile court interpreted and applied the new statutory language correctly. Thus, unlike in *Johnson*, here the court of appeals was answering a preserved question the parties advanced.

[7] The GAL also asserts that it was not necessary to disavow these cases for two reasons. First, the almost automatically language was an observation, not a rule. And second, none of the disavowed cases had relied on the almost automatically reasoning to reach a decision.

(continued . . .)

¶43 Contrary to the GAL's criticisms, the court of appeals should be lauded for its careful analysis and its commitment to cleaning up what could have been problematic case law had it been permitted to linger in the jurisprudence.

*B. The Court of Appeals Did Not Err When it*
*Described the Best Interest Inquiry as a Second*
*Element of the Termination Inquiry*

¶44 The GAL next argues that, in the process of disavowing the almost automatically cases, the court of appeals erred by treating the best interest consideration as a second element in the termination

---

As to the first contention, the GAL may be correct that, in at least one case, the almost automatically language was a practical observation that a majority of the court did not rely on. *See State, in interest of J.D.*, 2011 UT App 184, ¶ 34, 257 P.3d 1062 (Orme, J., concurring). But as to the second, the GAL incorrectly asserts that no court of appeals case has relied on that statement to reach a decision. As the court of appeals noted, the concept first appeared in *State in Interest of J.R.T.*, 750 P.2d 1234 (Utah Ct. App. 1988) (holding that a finding of abandonment satisfied the need to separately consider the child's best interests). And after the concurrence in *J.D.*, the concept mutated into a principle that other court of appeals panels employed as a rule. *See, e.g.*, *State in Interest of Z.J.*, 2017 UT App 118, ¶¶ 9, 11, 400 P.3d 1230 (citing almost automatically case law to reject respondent's argument that there was insufficient evidence to support a best interest finding); *In re Adoption of A.M.O.*, 2014 UT App 171, ¶¶ 20–22, 332 P.3d 372 (citing almost automatically case law to decide that the trial court did not sufficiently support its finding that termination would not be in the child's best interest "despite the existence of grounds for termination").

The GAL also objects to the court of appeals disavowing *In re J.R.T.*, 750 P.2d 1234, for an additional reason. The GAL argues that when *In re J.R.T.* was decided, the best interest analysis was not statutorily required. This is true, but the court in *In re J.R.T.* nonetheless recognized that the court was required to undertake a best interest analysis before ordering termination. *Id.* at 1238. Thus the *In re J.R.T.* court was still applying a grounds-then-best-interest analysis when it stated that a finding of the abandonment ground "satisfies the need separately to consider the best interest of the child." *Id.* The court of appeals therefore correctly disavowed that holding as inconsistent with the Act. *See In Interest of B.T.B.*, 2018 UT App 157, ¶ 44.

analysis. The court of appeals stated that "parental rights can be terminated only if both elements of a two-part test are satisfied." *Interest of B.T.B.*, 2018 UT App 157, ¶ 13. "First," the court of appeals said, "a trial court must find that one or more of the statutory grounds for termination are present." *Id.* "Second, a trial court must find that 'termination of the parent's rights is in the best interests of the child.'" *Id.* (citation omitted). The court of appeals opined that "[t]he trial court must make both of these findings not merely by preponderance of the evidence, but by 'clear and convincing evidence,' and the burden of proof rests with the petitioner." *Id.* (citations omitted).

¶45 The GAL argues the court of appeals erred by "transform[ing] what was a statutory consideration into an element requiring a clear and convincing level of proof." The GAL's argument suggests two different questions. First, whether the Act makes the best interest inquiry an element that a court must find before it can order termination. Second, what burden of proof attaches to the best interest analysis.

¶46 The GAL's first argument falls at the hands of precedent. In *State ex rel. A.C.M.*, we stated, "In order to terminate parental rights, the juvenile court must make two separate findings. First, it must find grounds for termination under Utah Code section 78A–6–507. . . . Second, the juvenile court must find that termination of the parent's rights is in the best interests of the child." 2009 UT 30, ¶ 23, 221 P.3d 185 (citations omitted); *see also State ex rel. T.E.*, 2011 UT 51, ¶ 17, 266 P.3d 739. *A.C.M.* was not groundbreaking; Utah courts have, over the last half century, referenced the termination process as a two-step inquiry a multitude of times.[8] The GAL does not

---

[8] *See, e.g., State ex rel. T.E.*, 2011 UT 51, ¶ 17, 266 P.3d 739; *In re Castillo*, 632 P.2d 855, 857 (Utah 1981); *In Interest of Winger*, 558 P.2d 1311, 1313 (Utah 1976); *In re State in Interest of L.J.J.*, 360 P.2d 486, 488 (Utah 1961); *State ex rel. B.M.S.*, 2003 UT App 51, ¶ 6, 65 P.3d 639; *State ex rel. R.A.J.*, 1999 UT App 329, ¶ 22, 991 P.2d 1118; *State in Interest of G.D..*, 894 P.2d 1278 (Utah Ct. App. 1995); *State in Interest of R.N.J.*, 908 P.2d 345 (Utah Ct. App. 1995), *superseded and abrogated on other grounds as recognized in In re Guardianship of A.T.I.G.*, 2012 UT 88, ¶ 20 n.11, 293 P.3d 276; *State in Interest of M.W.H.*, 794 P.2d 27, 29 (Utah Ct. App. 1990).

engage with this case law.[9]

¶47 The GAL's second argument raises a more interesting question. In essence, the GAL claims the court of appeals misstated the test when it explained that a petitioner must establish that termination is in the child's best interest under a clear and convincing standard. The Act's plain language can be read to support the GAL's argument.

¶48 Subsection 506(3) of the Act states that "[t]he court shall in all cases require the petitioner to establish the facts by clear and convincing evidence." UTAH CODE § 78A-6-506(3). The statute thus places the burden on the petitioner to establish *the facts* that would justify termination by clear and convincing evidence. For example, if a petition is based on the premise that the court should terminate a parent's right because the respondent has neglected her child, the petitioner is required to prove that the respondent parent had neglected her child. And the petitioner needs to make this showing with clear and convincing evidence.

¶49 The statute could be read, as the GAL appears to do here, to say that whether termination is in a child's best interest is a determination the Legislature has assigned to the court reviewing the petition. Under this reading, the court must decide, based on those facts that have been established by clear and convincing evidence, whether termination is in the child's best interest. *See id.* In other words, the Act's language can be read to not impose on the petitioner a burden of persuading the court, under a clear and convincing standard, that termination is in the best interests of the child.

¶50 The GAL's argument is made all the more intriguing by the fact that this court appears to have not addressed in case law the

---

[9] Although the GAL does not address the relevant precedent, it raises an interesting argument based upon the Act's language. Subsections 503(12) and 506(3) require that after the court finds a ground for termination, "the court shall then consider the welfare and best interest of the child of paramount importance in determining whether termination of parental rights shall be ordered." Thus, the Act alone does not explicitly characterize best interest as an element that a party must prove.

However, a two-step analysis has long been a hallmark of our case law. As mentioned above, the GAL does not address that case law, let alone ask us to overturn it.

question of the burden the Act imposes with respect to the best interest showing. In fact, we have at times described the Act in a fashion consistent with the way the GAL reads the statute. For example, in *State ex rel. T.E.* this court outlined that "[f]irst, the juvenile court must find by clear and convincing evidence that there is a permissible ground for termination." 2011 UT 51, ¶ 17 (footnotes omitted). But in describing the best interest inquiry, we stated that the court is required to "conclude that termination of parental rights is in the best interest of the child" without reference to a burden of persuasion or proof. *Id.* ¶ 18.

¶51 The court of appeals, on the other hand, has expressly interpreted the Act to require the best interest finding be made by clear and convincing evidence. *See, e.g.*, *State, in interest of F.B.*, 2012 UT App 36, ¶ 2, 271 P.3d 824; *State, in interest of J.D.*, 2011 UT App 184, ¶ 11, 257 P.3d 1062; *State ex rel. C.K.*, 2000 UT App 11, ¶ 23, 996 P.2d 1059; *State ex rel. R.A.J.*, 1999 UT App 329, ¶ 7, 991 P.2d 1118; *State in Interest of R.N.J.*, 908 P.2d 345, 351 (Utah Ct. App. 1995). For example, in *State ex rel. C.K.*, the court of appeals reviewed the decision of a juvenile court to not terminate parental rights. 2000 UT App 11, ¶ 1. Citing the language now present in sections 503 and 506 of the Act, the court of appeals held that a "court must find that termination of parental rights serves the best interests of the child. [And that] finding must be based on clear and convincing evidence." *Id.* ¶ 18. The court of appeals concluded, "The [petitioner] did not satisfy *its burden to present clear and convincing evidence* as to why terminating [parental] rights was in the best interests of [the children.]" *Id.* ¶ 24 (emphasis added).

¶52 Furthermore, reading the Act to require proof of best interest by clear and convincing evidence is consistent with the way this court described the common law best interest inquiry. The child's best interest had long been "the consideration of paramount importance" that could justify the State interfering with a parent's rights in the child. *In re J. P.*, 648 P.2d 1364, 1367 (Utah 1982) (citation omitted); *see also In Interest of Winger*, 558 P.2d 1311, 1313 (Utah 1976); *In re Bradley*, 167 P.2d 978, 984 (Utah 1946) (holding that a party needed to convince the trier of fact that termination was in a child's best interest before the court could terminate parental rights or award custody to a non-parent). We recognized the common law's "strong presumption" that it is in the best interest of the child to be raised by her natural parents and that this presumption must be overcome before parental rights could be terminated. *In re Castillo*, 632 P.2d 855, 856-57 (Utah 1981). We held that determination must be made by clear and convincing evidence. *Id.* at 857.

¶53 Finally, our Rules of Juvenile Procedure contemplate that best interest must be proved by clear and convincing evidence. Utah Rule of Juvenile Procedure 41(b) provides: "The burden of proof in matters brought before the juvenile court shall be as follows: . . . cases involving the permanent deprivation of parental rights must be proved by clear and convincing evidence unless otherwise provided by law."[10]

---

[10] On top of all that, the clear and convincing standard might be constitutionally mandated. In *Santosky v. Kramer*, the United States Supreme Court held that "[b]efore a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." 455 U.S. 745, 747–48 (1982).

In *Santosky*, the Supreme Court considered a challenge to a New York statute requiring a finding that a child was neglected before parental rights could be terminated. *Id.* at 747. Under the statute, however, that finding only needed to be made by a preponderance of the evidence. *Id.* The Supreme Court held that this low burden violated the parent's due process rights and that, to pass constitutional muster, the court needed to base that finding on clear and convincing evidence. *Id.* at 747–48.

Some state courts have interpreted *Santosky* to require the clear and convincing standard to apply to statutory requirements not addressed in *Santosky*. *See, e.g., In re Daniel C.*, 480 A.2d 766, 771 (Me. 1984) ("The majority of cases we have reviewed simply apply the *Santosky* requirement of clear and convincing evidence to whatever statutory elements the legislature has provided."); *In re D.C.*, 71 A.3d 1191, 1198 (Vt. 2012) ("In other words, the *Santosky* holding stands for the proposition that whatever measure of 'unfitness' a state requires to terminate parental rights must be shown by clear and convincing evidence. The Vermont Legislature has chosen the best-interests criteria . . . which encompass both directly and indirectly the question of parental fitness.") Other states have read *Santosky* more narrowly and concluded that the clear and convincing standard is only required when a court evaluates parental unfitness and not when it considers what outcome is in a child's best interest. *See Kent K. v. Bobby M.*, 110 P.3d 1013, 1020 (Ariz. 2005); *In re D.T.*, 818 N.E.2d 1214, 1225 (Ill. 2004).

Relying on *Santoksy*, this court held in *In re J.P.* that a finding of parental unfitness by clear and convincing evidence was required before parental rights could be terminated. 648 P.2d at 1377. But, as

(continued . . .)

¶54 The GAL has raised a very interesting and important question. It has not, however, engaged with the full panoply of authorities with which we would need to grapple before we could decide that the court of appeals erred by saying that a court must find that termination is in the child's best interest by clear and convincing evidence.

### IV. Termination Must Be Strictly Necessary to Promote the Best Interest of the Child

¶55 The GAL and Father both seek review of the court of appeals' interpretation of the language the Legislature added to the Act in 2012—that "if the court finds strictly necessary" the court may terminate parental rights. UTAH CODE § 78A-6-507(1). The court of appeals held that a court must determine if termination is strictly necessary as part of its consideration of the best interest of the child. *In Interest of B.T.B.*, 2018 UT App 157, ¶ 50, 436 P.3d 206.

¶56 The GAL contends that the court of appeal erred by tying strictly necessary to the best interest analysis. The GAL does not, however, offer an alternate interpretation of that language. Father, on the other hand, rejects the court of appeals' interpretation and avers that the language means the court must "first and independently consider whether there are alternatives short of termination that will adequately protect all of the interests at stake," including the parent's interests.

¶57 Thus, the question becomes what did the Legislature intend when it predicated termination on a finding that termination is

---

the court of appeals observed, we have not squarely addressed whether Utah's best interest inquiry is constitutionally required, and thus we have not had to address the related question of whether the clear and convincing standard is likewise a constitutional requirement. *See In Interest of B.T.B.*, 2018 UT App 157, ¶ 14 n.1. We note, however, that in *In re Estate of S.T.T.*, this court considered what must be shown to rebut the presumption that the parent's decision regarding grandparent visitation is in the child's best interest. 2006 UT 46, ¶ 28, 144 P.3d 1083. Relying on *Santosky*, we held that "[b]ecause the parental presumption deals with parental liberty interests, and accordingly should be afforded great deference by the courts, we conclude that a clear and convincing standard of proof should apply to satisfy due process requirements." *Id.*

strictly necessary. To answer this question, we start with the statute's plain language.

¶58 As noted above, section 78A-6-507 states, "Subject to the protections and requirements of Section 78A-6-503, *and if the court finds strictly necessary*, the court may terminate all parental rights with respect to a parent if the court finds" one of the nine enumerated grounds for termination. (Emphasis added.)

¶59 Confusion emerges because the Legislature does not obviously identify for what purpose the court should find termination "strictly necessary."[11] Stated differently, the language "strictly necessary" cannot exist in a vacuum. Termination must be strictly necessary to achieve some end. But section 507 does not identify that end.

¶60 Interpreting the Act as a whole reveals the answer— termination must be strictly necessary to promote the child's best interest. Subsection 507(1) mandates that the court's termination analysis is "[s]ubject to the protections and requirements of Section 78A-6-503." In section 503, the Legislature details a number of

---

[11] The court of appeals analyzed the strictly necessary language by looking to the dictionary definitions of these words. After examining the dictionary, the court determined that courts should terminate rights only when it is "absolutely essential." *In Interest of B.T.B.*, 2018 UT App 157, ¶¶ 52–54.

As explained above, the statute's lack of clarity does not arise because the words themselves are not easily understood. Strictly necessary is no less understandable than the phrase absolutely essential. And we do not believe that the bar and bench are well served by the suggestion that a juvenile court should find that termination is absolutely essential in order to conclude that the termination is strictly necessary. As noted, the confusion comes not from the words themselves but because the statute does not immediately say for what purpose termination should be strictly necessary. Hence, we think it sufficient to leave the statutory words as they are and not contemplate synonyms. Otherwise we are just swapping the words the Legislature chose for words that it did not. As we have observed, "[l]anguage matters and, over time, even small variations can take on lives of their own and distort the analysis." *State v. Gallegos*, 2020 UT 19, ¶ 58; --P.3d --. In light of that, a juvenile court's inquiry should address whether termination is strictly necessary to promote a child's welfare and best interest.

important policy statements that a court must keep front of mind when deciding what is in a child's best interest. For example, the Legislature recognized that the "interests of the state favor preservation and not severance of natural familial bonds in situations where a positive, nurturing parent-child relationship can exist, including extended family association and support." UTAH CODE § 78A-6-503(10)(d). And, lest there be any question about the manner in which the Legislature believed the state should wield the power to dissolve parental bonds, the Act states "[w]herever possible, family life should be strengthened and preserved." *See id.* § 78A-6-503(12).

¶61 But the Legislature finishes the sentence that begins "[w]herever possible, family life should be strengthened and preserved" with the instruction that "if a parent is found . . . to be unfit or incompetent based upon any of the grounds for termination," "the welfare and best interest of the child" should be considered "of paramount importance in determining whether termination of parental rights shall be ordered." *Id.* Thus, once a statutory ground for termination is found, identifying the option for the child that promotes her welfare and best interest takes precedence over the other considerations.[12]

¶62 Therefore, although section 507 does not expressly say to what end a court should find termination is "strictly necessary," section 503 directs that the purpose of the termination proceeding is to promote the welfare and best interest of the child. Thus, if a court finds statutory grounds for termination, the court must determine if termination is strictly necessary for the welfare and best interest of the child.

---

[12] This conclusion follows from the Legislature's choice of the word paramount. *Paramount*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/paramount (defining "paramount" as "superior to all others"); *Paramount*, CAMBRIDGE DICTIONARY ONLINE, https://dictionary.cambridge.org/us/dictionary/english/paramount (defining "paramount" as "more important than anything else"). Thus, when the Legislature instructed that the court should consider the "welfare and best interest of the child of paramount importance," it elevated that consideration above all of the other important interests the Act identifies.

¶63 As the court of appeals stated, this analysis "should be undertaken from the child's point of view, not the parent's." *In Interest of B.T.B.*, 2018 UT App 157, ¶ 54.[13] However, the court of appeals also stated that "in [doing the best interest analysis,] courts should not forget the constitutional dimension of the parental rights on the other side of the ledger." *Id.* ¶ 55. And in briefing to this court, Father similarly argues that once grounds are found, the court must consider whether to terminate parental rights while considering the interests of *both the parent* and the child.

¶64 We agree that the welfare and best interest analysis should be undertaken from the child's point of view. But we reject the proposition that the juvenile court is to, at the best interest stage, weigh a parent's constitutional rights against the child's welfare and best interest. If a court has adhered to the statutory framework, a parent's constitutional rights will have received substantive and procedural protections throughout the process. And the parent's constitutional rights will continue to receive protection during the best interest inquiry through the strictly necessary requirement and the clear and convincing standard. But when the court considers a child's welfare and best interest, the court's focus should be firmly fixed on finding the outcome that best secures the child's well-being.

¶65 That is not to say that the role of a natural parent is irrelevant to the best interest inquiry. Quite to the contrary, the Legislature has made clear that, as a matter of state policy, the default position is that "[i]t is in the best interest and welfare of a child to be raised under the care and supervision of the child's natural parents," and that a "child's need for a normal family life in a permanent home, and for positive, nurturing family relationships is usually best met by the child's natural parents." UTAH CODE § 78A-6-503(8). Indeed, the Legislature recognizes a "right of the child to be reared by the child's natural parent." *Id.* § 78A-6-503(4). For these reasons, the Legislature has required that a court only terminate parental rights when it is strictly necessary to promote a child's welfare and best interest.

¶66 In other words, a court must start the best interest analysis from the legislatively mandated position that "[w]herever possible,

---

[13] We also note, by way of reminder, that the Legislature incorporated the requirement that the strictly necessary analysis proceed from the child's point of view into the statute in a 2020 amendment. *See supra* ¶ 25 n.4.

family life should be strengthened and preserved." *Id.* § 78A-6-503(12). A court may then terminate parental rights only when it concludes that a different option is in the child's best interest and that termination is strictly necessary to facilitate that option. If the child can be equally protected and benefited by an option other than termination, termination is not strictly necessary. And the court cannot order the parent's rights terminated.

¶67 As the court of appeals eloquently stated,

> [T]his part of the inquiry also requires courts to explore whether other feasible options exist that could address the specific problems or issues facing the family, short of imposing the ultimate remedy of terminating the parent's rights. In some cases, alternatives will be few and unsatisfactory, and termination of the parent's rights will be the option that is in the child's best interest. But in other cases, . . . courts should consider whether other less-permanent arrangements . . . might serve the child's needs just as well . . . .

*In Interest of B.T.B.*, 2018 UT App 157, ¶ 55.

¶68 The GAL avers that the court of appeals' construction of "strictly necessary," especially with the attention it pays to alternatives to termination, runs counter to the goal of providing children with permanency. *See State in Interest of K.C.*, 2015 UT 92, ¶ 27, 362 P.3d 1248 ("Children have an interest in permanency and stability."); *State in interest of M.H.*, 2014 UT 26, ¶ 44, 347 P.3d 368 (Nehring, A.C.J., concurring) ("Indeed, the policy underlying the Child Welfare Reform Act is one of swift permanency." (citation omitted) (internal quotation marks omitted)).

¶69 However, the GAL's argument misses that the policy of permanence and the statutory language, as the court of appeals accurately described it, are not mutually exclusive. A court deciding whether termination is strictly necessary for the child's best interest would consider a child's need for permanence as part of that inquiry. The strictly necessary language is designed to ensure that the court pause long enough to thoughtfully consider the range of available options that could promote the child's welfare and best interest.

¶70 The State, as amicus, also raised a concern about the court of appeals' suggestion that courts look to "less permanent arrangements." Specifically, the State worries that this instruction runs contrary to the State's express statutory requirements to achieve permanence for children. (Citing, e.g., 42 U.S.C. § 675(5)(C)

(discussing federal permanency timelines); UTAH CODE § 78A-6-314 (establishing mandatory state permanency timelines); UTAH CODE § 62A-4a-105(1)(g) (requiring DCFS to enforce federal laws for protection of children)).

¶71 But the court of appeals' analysis must be read in the context in which it arose. As the court of appeals notes, a parent, and not the State, filed the termination petition here. Such private termination proceedings do not involve the same services and timelines regarding permanency that would usually be required if the State were involved. *See* UTAH CODE § 78A-6-314. And private termination proceedings lack many of the parental protections that are built into the process when the State seeks termination of parental rights.[14] That means that in cases like this, the best interest analysis may be the only real opportunity for the court to consider whether something short of termination would serve the child's welfare and best interest.[15] We do not read the court of appeals decision to suggest that the strictly necessary finding is an invitation to disrupt the timelines and permanency goals at play when the State petitions for termination.[16]

---

[14] For example, as the court of appeals stated, "[i]n private cases where a petitioner seeks to terminate the rights of a *non-custodial* parent, . . . no statute requires the court to even consider whether to implement reunification services, and often no infrastructure is in place through which to offer any such services in any event." *In Interest of B.T.B.*, 2018 UT App 157, ¶ 23 n.6.

[15] *See id.* ("A rigorous 'best interest' analysis sometimes presents the only meaningful opportunity that parents have to demonstrate to the court that, despite the existence of a statutory ground for termination, they have been recently engaged in significant efforts to improve their lives and remedy their past issues.").

[16] The State avers that the cases that have been decided since *B.T.B.* suggest that the court of appeals did not "upend the termination equation" and "that *B.T.B.* does not represent the sort of wholesale impediment to termination of parental rights that the [GAL] would suggest." Those cases are not before us, and we are therefore in no position to opine on whether they are correctly decided, but we are nonetheless heartened by the suggestion that, at least from the State's perspective, the court of appeals' decision in *B.T.B.* is not causing the problems the GAL predicts.

¶72 The GAL is also concerned that a juvenile court would not have jurisdiction to consider options other than termination when the matter originates in a private petition to terminate rights. But when a juvenile court has jurisdiction of a minor under Utah Code Section 78A-6-103, that court "has jurisdiction over questions of custody, support, and parent time of [the] minor." UTAH CODE § 78A-6-104(5). We have recognized that a juvenile court considering a termination petition possesses jurisdiction over questions of custody, support, and parent-time. *See A.S. v. R.S*, 2017 UT 77, ¶ 2, 416 P.3d 465. Thus, a juvenile court is empowered to consider the full range of options that it might employ to promote a child's welfare and best interest.

¶73 Father, on the other hand, argues (1) that the strictly necessarily language creates a separate element, and (2) that a court must consider whether termination is strictly necessary before it considers whether grounds for termination are present.

¶74 As to the first contention, Father primarily argues that if strictly necessary is not treated as a separate element of the inquiry, it risks becoming lost to the point of becoming superfluous. We take Father's point; the Legislature added this requirement to the statute and a court must consider whether termination is strictly necessary. We disagree, however, with Father's contention that the only way to ensure a court finds that termination is strictly necessary is to make it a separate element. As discussed above, the language is not rendered superfluous by being part of the best interest analysis. It still requires the court to find, on the record, that no other option can achieve the same welfare and best interest for the child. *Supra* ¶¶ 65–67.

¶75 Even assuming, hypothetically, that the Legislature intended strictly necessary to be a separate element, Father points to nothing in the text to support his second contention that the Legislature intended that a court address whether termination was strictly necessary as the first step of the analysis. And we see nothing in the Act to support that contention either.

¶76 We agree with the court of appeals that the amendment to the Act did not create a third element to the termination analysis. Rather, after sufficient grounds for termination have been found, the court must assess what is in the child's best interest. And as part of that inquiry, a court must specifically address whether termination is strictly necessary to promote the child's welfare and best interest.

## V. The Court of Appeals Did Not Err in Remanding to the Juvenile Court

¶77 Finally, the GAL claims that the court of appeals went too far after rejecting the Father's reading of "strictly necessary." According to the GAL, the court of appeals erred by construing Father's "strictly necessary" argument as going to the best interest analysis and remanding to the juvenile court for reconsideration of that portion of the termination inquiry because it had "clarified and reformulated" the test.

¶78 Father only argued, the GAL asserts, that the strictly necessary language was a separate prong and could only be met if an adoption was pending. Having rejected that specific argument, the GAL argues that the court of appeals' work was done and that it should have simply affirmed the termination order.

¶79 As we explained above, the parties cannot force a court into a misinterpretation of the statute by the arguments they raise. *Supra* ¶¶ 40–41. In the course of rejecting Father's interpretation of the statute, the court of appeals opined on the Act's correct interpretation. Because the juvenile court had premised its order on an undeveloped interpretation of the Act, the court of appeals properly remanded for consideration under the correct legal standard. We affirm the decision to remand to the juvenile court for further proceedings but require that the juvenile court consider Mother's petition consistent with the interpretation of the statute we have outlined.

## CONCLUSION

¶80 The court of appeals did not err in disavowing the almost automatically language in its case law. We reject Father's argument that the strictly necessary language adds a separate and sequentially-primary element to the termination analysis. And we affirm the court of appeals' ultimate holding that the Act requires that termination be strictly necessary for the best interests of the child. We also affirm the court of appeals' determination to remand to the juvenile court. We instruct the juvenile court to revisit the petition and apply the interpretation of the Act we have set forth in this opinion.